## YOUNG v. DANIELS.

An application to enforce the specific performance of a contract, is always addressed to the sound discretion of the chancellor, guided and governed by the general rules and principles of equity jurisprudence.

In such cases, relief is not a matter of right in either party, but is granted or withheld, according to the circumstances of each case, when such rules and principles will not furnish any exact measure of justice between the parties.

In contracts respecting real property, courts of equity are in the habit of interposing to grant relief to a far greater extent, than in cases respecting personal property; and while, in cases respecting chattels, this jurisdiction is limited to special circumstances, in cases of land contracts it is universally maintained.

In contracts relating to real estate, time may be of the essence of the contract.

But in equity, time is not deemed of the essence of the contract, unless the parties have so treated it, or it necessarily follows from the nature and circumstances of the contract.

Where a contract for the conveyance of real estate contained the following provision: "And it is expressly agreed by and between said parties, that in the event of the non-payment of said sum of money, or any part thereof, at the time herein limited, that then the said D. may elect to consider the contract at an end, and the said Y. shall be considered the tenant of D., holding over the termination of his lease;" *Held,* 1. That time had not been made of the essence of the contract, by the express stipulation of the parties. 2. That this provision cannot, of itself, be construed as making time material, without some evidence that the vendor elected so to treat it.

Where in a suit to enforce the specific performance of a contract to convey real estate, there was nothing showing any change in the value of the land; or that in the period intermediate between the sale and the offer to pay, there was any change of circumstances affecting the rights, interests or obligations of the parties; and where the vendee proposed to pay the consideration, and brought suit to compel a conveyance of the land, and had contracted to pay the highest rate of interest, before the vendor indicated any intention of declaring the contract at an end; *Held,* That there was nothing to justify the conclusion, that the contract was forfeited by the non-payment of the money, on the day it became due.

Where in a suit to enforce the specific performance of a contract to convey real estate, the bill alleged that the vendor was continuously a non-resident of the state; that at the time the notes became due, neither he, nor any person for him, was at the place of payment, to demand payment; that the vendor has neither returned the notes of the vendee, nor given him notice of his election to consider the contract at an end; that within three months after the last note became due, the vendee, at the place where the notes

were to be paid, and to the person who acted as the agent of the vendor in making the contract, offered to perform the contract on his part, and demanded a deed; and that said agent refused to perform said contract, and there was no other person there to perform the same; and where the vendee, within six months after such offer to perform, instituted suit to enforce the contract, and brought his money into court; *Held*, That the vendee had not been guilty of such negligence in his offer to pay the purchase money, as to forfeit all right to claim a specific performance of the contract.

A party seeking to enforce the specific performance of a contract to convey real estate, is not required to tender a deed to the respondent for execution, before bringing his suit.

Where in a suit for the specific performance of a contract to convey real estate, the bill alleged that the notes for the purchase money were to be paid at a specified place; that the vendor was a non-resident of the state, and had revoked the power of his agent to receive the money; that the vendee applied within a reasonable time after the maturity of the notes, at the proper place, to pay them, and demanded a deed; and that there was no person there to receive the one, or execute the other; *Held*, That the vendee was not bound to follow the vendor, in order to proffer to him in person, a performance of the contract, and that he was excused from making a tender of the purchase money, before the commencement of the suit

*Appeal from the Scott District Court.*

THIS was a petition for the specific performance of a contract relating to the sale of certain land. To this there was a demurrer, which was overruled, and the respondent failing to answer, a decree was entered in accordance with the prayer of the petition. Respondent appeals, and in this court relies upon the sufficiency of his demurrer.

HARVARD LAW SCHOOL LIBRARY.

The material averments of the bill are as follows: On the 10th day of July, 1852, complainant made a contract in writing with the respondent, for the purchase of land. Respondent was then a non-resident of the state, and so continued until the time of bringing this suit, being a resident of the state of New York. The contract was signed and executed by one McGregor, as the attorney of said respondent. For the land, complainant was to pay two hundred dollars, for which he gave his notes of one hundred dollars each, due in one and two years, with interest at ten per cent. from date, payable to said respondent, at the office of his said attorney, in the city of Davenport. The conditions of the

bond are as follows: If the said William J. Young shall pay the said notes at maturity, and shall, in the meantime, pay all taxes on said land, and said Francis Daniels shall, upon completion of said payments, make, execute and deliver, or cause to be made, executed and delivered, a good and sufficient deed to the said Young for said tract of land, then this obligation to be void; otherwise to remain in full force and virtue; and it is expressly agreed, by and between said parties, that in the event of the non-payment of said sum of money, or any part thereof, at the time herein limited, that then the said Francis Daniels may elect to consider the said contract at an end, and the said Young shall be considered the tenant of Daniels, holding over the termination of his lease."

The petition admits that the notes were not paid at maturity, but avers that neither the respondent, nor any person for him, was at the office of the said attorney to demand payment. It also avers, that the respondent has neither returned complainant his notes, nor given him notice of his election to consider the contract at an end, and that on the 11th of October, 1854, at the office of the said McGregor, he offered to specifically perform said contract on his part; offered to pay the money due, and demanded a deed; that respondent was not present; that his attorney refused to perform the contract; that the said attorney's authority had before that time been revoked; and that no other person was there to perform said contract for respondent. The petitioner offers to pay, and avers that he brings into court the money due on said notes, and asks that respondent be decreed to specifically perform the contract on his part. This action was commenced April 7, 1855.

*G. C. R. Mitchell,* for the appellant.

*Whitaker & Grant,* for the appellee.

WRIGHT, C. J.    To reverse this decree, respondent insists, under his demurrer: *First,* that time was of the essence of the

contract between these parties, and that the bill shows such default on the part of complainant in making payment, as releases the respondent from any obligation therein; *second*, that the bill does not aver the tender of a deed to respondent for execution, before suit brought; *third*, that no such tender of the amount due on the bond is stated, as entitles complainant to a decree.

An application to enforce the specific performance of a contract, is always addressed to the sound discretion of the chancellor, guided and governed by the general rules and principles of equity jurisprudence. *Shaw* v. *Livermore*, 2 G. Greene, 343; Story's Eq. Juris. § 742. In such cases, relief is not a matter of right in either party, but it is granted or withheld, according to the circumstances of each case, when such rules or principles will not furnish any exact measure of justice between the parties. Neither can any rules or principles be laid down, which will be of absolute obligation or authority in all cases. In contracts respecting real property, however, courts of equity are in the habit of interposing to grant relief to a far greater extent, than in cases respecting personal property; and while in cases respecting chattels, this jurisdiction is limited to special circumstances, in cases of land contracts, it is universally maintained. Story's Eq. Jur. § 746.

In reference to such contracts, also, there can now be no doubt, but that time may be of their essence. Says Story, J., in *Taylor* v. *Longworth et al.* (14 Pet. 172): "Time may be made of the essence of the contract by the express stipulations of the parties, or it may arise by implication from the very nature of the property, or the avowed objects of the seller or purchaser." And even when time is not thus expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross *laches*, or has been inexcusably negligent in performing the contract on his part; or if there has, in the intermediate period, been a material change of circumstances, affecting the rights, interests or obligations of the parties; in all such cases, courts of equity will refuse to decree any specific per-

formance, upon the plain ground, that it would be inequita-
ble and unjust. But, except under circumstances of this
sort, or of an analogous nature, time is not treated by courts
of equity as of the essence of the contract; and relief will
be decreed to the party who seeks it, if he has not been
grossly negligent, and comes within a reasonable time, al-
though he has not complied with the strict terms of the con-
tract. But it is also true, that in all such cases, the complain-
ant should make out a case free from doubt; show that the
relief asked is equitable under the circumstances, and account
in a reasonable manner for his delay, and any apparent omis-
sion of duty. Time is, however, not deemed, in equity, of the
essence of the contract, unless the parties have so treated it,
or it necessarily follows from the nature and circumstances
of the contract. Story Eq. Jur. § 776; *Brashin* v. *Graty*, 6
Wheat. 528; *Mathews* v. *Gilliss*, 1 Iowa, 242; *Brumfield* v.
*Palmer*, 7 Blackf. 227. Let us now apply the foregoing
general doctrines to the facts of this case, as to the first
ground of demurrer. And we have no hesitation in saying,
that time has not been made of the essence of this contract
by the express stipulation of the parties. The conditions of
this bond are not unlike ordinary contracts, except the clause
giving the vendor the election to consider the contract at an
end, in the event of the non-payment of the money at the
time limited. And we conclude, that this provision cannot
of itself, be construed as making time material, without
some evidence that the vendor elected to so treat it. By this
clause, the vendee agreed that the vendor should have the
power to declare the contract at an end, upon his failure to
pay the money, and the vendor reserved to himself the right
to so elect. And, therefore, if he had so elected, and de-
clared the contract forfeited, and returned to the vendee his
notes, he might well claim that complainant was not entitled
to relief. The bill, however, expressly charges that respond-
ent never has returned, or offered to return, these notes;
and that he has never elected to declare the contract forfeited
or at an end, and, on demurrer, these averments are, of course,
taken as true. In *Benedict* v. *Lynch*, 1 Johns. Ch. 370, the

stipulation was, "that if the plaintiff failed in either of his payments, the agreement was to be void," and this stipulation the chancellor upheld, and dismissed the bill.  This is the leading case upon the subject of specific performance in this country ; and while it certainly has not been followed uniformly by other tribunals, yet, giving to it all the weight due to the eminent jurist who delivered the opinion, we do not think it applicable to this case.  In that, the agreement was to be void, if the vendee failed in his payments ; and by this language, it is said, the parties expressly made time of the essence of the contract.  In this case, however, the contract upon the non-payment of the purchase money was to be at an end, if the vendor so elected.  In the one case, as we view it, the contract declared the consequence of non-payment ; in the other, the vendor reserved the right to declare the consequences.  This he never did ; and it would be manifestly inequitable and unjust to permit him to retain the vendee's notes (as he does even yet) ; never to do anything to notify him that he declared the contract at an end ; and yet hold that there was a forfeiture of the contract, because the money was not paid on the day it became due. *Scott* v. *Fields et al.*, 7 Ohio, 424, was a case similar to the one above cited from 1 John. Ch.  In that case, the stipulation was that, if the plaintiff failed to make the payments as specified, he was to forfeit a payment made, and to have the agreement considered null and void.  And it was held, that by this stipulation the parties had made time of the essence of the contract ; that this had been violated by the complainant, and his bill was, therefore, dismissed.  The distinction between this stipulation and the one in the case at bar, is more palpable even than in that of *Benedict* v. *Lynch.*

The case of *Gibbs* v. *Champion*, 3 Ohio, 335, was different from the preceding one.  There, one-half of the purchase money was to be paid in January, and the other half in the succeeding July.  Nothing was paid until the latter day, and then the whole amount due, was tendered.  A specific performance was decreed, and a prominent reason assigned for the decision is, that, after the default in not paying the

first instalment, the vendor held on to the contract, and neither offered to return the notes, nor took any other steps to exonerate the vendee from his liability. In *Rummington* v. *Kelley and another*, 7 Ohio, 432, however, the vendors, after default, offered to return the notes, and when refused, deposited them in the hands of a third person for the use of the maker. And the vendors, not acquiescing in the delay, but having informed the vendee that they considered the contract at an end, and been active in freeing themselves from liability, it was held that they were discharged. So in the case of *Higby* v. *Whitaker et al.*, 7 Ohio, 198, it is held, that the law requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives a reasonable time to comply ; but it requires eagerness, promptitude, ability, and a disposition to perform, by him who would resist a rescision of his contract. This notice on the part of the vendor to free himself from liability, would, of course, not be necessary in cases where time was either expressly or impliedly of the essence of the contract, or where the vendee had, by his own laches, forfeited all claim to relief.

Neither do we perceive anything in the nature of this property, or otherwise, to justify us in concluding that time was designed to be made of the essence of the contract. Where the land is improved, yielding a yearly rent; where it appears that the property is liable to fluctuation in value, or has actually changed in value; or where the vendee has, by his acquiescence, or otherwise, treated the contract as rescinded; in these and other cases, courts have held, in the absence of express agreement, that time was material, and so designed by the parties. *Brown* v. *Haines*, 12 Ohio, 1 ; *Dolarst* v. *Rothschild*, 1 Sim. & Stu. 590. From the price agreed to be paid in this case, however, we infer that the land was unimproved. There is nothing to show any change in the value of the land ; nor that in the period intermediate between the sale and offer to pay, there was any change of circumstances affecting the rights, interests, or obligations of the parties. The complainant's acquiescence

Young v. Daniels.

in the rescision, cannot fairly be inferred, for he comes, as we think, *recenti facto*, before the vendor indicates any intention of declaring the contract at an end, and proposes to pay the money, and also brings his suit.   In addition to this, the vendee had contracted to pay the highest rate of interest known to our law; and as compensation, and not forfeiture, is the doctrine of equity, we see nothing, so far, to justify the conclusion, that this contract was forfeited by the non-payment of the money on the day it became due.

We are, then, next to consider, whether the complainant was guilty of such negligence in his offer to pay the purchase money, as to forfeit all right to claim a specific performance.   And what we have said as to the other points in the case, is in many respects applicable here.   Generally, where no claim of avoidance is in the contract, or where time is not made material by implication, or the avowed object of the parties, specific performance may be granted, as we have seen, on the sound discretion of the chancellor. *Wynn* v. *Morgan*, 7 Vesey, 202; *Dakin* v. *Copse*, 2 Russell, 170.

In this case, the bill avers that the vendor was continuously a non-resident of the state at the time the notes became due; and that neither he, nor any person for him, was at the place of payment to demand payment.   He at no time notified the vendee that he should insist upon a strict compliance with the contract, nor did he at any time, even so late as April, 1855, when the suit was instituted, return, or offer to return, the complainant's notes, which, for aught appears to the contrary, he still holds, or may have assigned to an innocent holder.   Within three months after the last note became due, the complainant, at the place where the notes were to be paid, and to the person who acted as respondent's agent in making the contract, offered to perform the contract on his part, and demanded the deed.   This agent's authority had been previously revoked, for what purpose does not appear, nor is it perhaps material.   Within six months thereafter, he institutes this suit, and proffers the money by his bill, and avers that he brings it into court.

For aught that appears, the parties are in the same situation as to this property, that they were on the day of the sale; the vendor has not disposed of it, or in any manner treated the contract as forfeited, nor does it appear that any material injury has resulted to him from the delay; and we think no equitable rule will be violated in requiring him to convey this land, unless the complainant's bill is defective, for the other reasons specified in the demurrer and urged in argument, which we now proceed to consider. Was it necessary that complainant should have tendered to respondent a deed for execution, before bringing this suit? We think not. The English rule, has never been adopted in this state, but on the contrary, has been held not to prevail. *Carson* v. *Lucore*, 1 G. Greene, 33; *Powers* v. *Bridges*, 1 Ib. 235.

In the third and last place, we are to consider the objection relating to the tender of the money to complainant. There can be no doubt of the general doctrine, that before a vendee can ask a specific performance of a contract, he must have performed, or offered to perform, whatever the contract has made a condition precedent on his part. Thus, ordinarily, money is to be paid or offered, where such is the contract; and so of anything else devolving upon the party by his agreement. And this is all that is determined by the brief case of *Castleman* v. *Harris*, 1 Ind. 125, referred to by respondent; but the general doctrine is abundantly sustained by authority, *Washburn* v. *Dewey*, 17 Vermont, 92; *Greenuf* v. *Strong*, 1 Bibb, 590; *Bearden* v. *Wood*, 1 A. K. Marshall, 450; *Colson* v. *Thompson*, 2 Wheat. 336; Story's Eq. Jur. § 771.

But even this general rule, will be found not to be of universal application. One exception is, where the vendor has put it out of his power to comply, or rendered it unnecessary, by refusing to convey; another, where the terms of the agreement are incapable of being strictly complied with; another, where the parties have subsequently to the agreement, expressly, or impliedly, waived the precedent performance. Other courts, again, have gone so far as to hold, that an offer to perform at the time of suit brought, and the

bringing the money into court, ready for the vendor, will be sufficient, subject the question of costs. And we are by no means prepared to say, that we should refuse relief, merely upon the ground that a previous tender was not proved, if the complainant brought his money into court, subject to the respondent's control, giving to the vendor compensation for any costs incurred or injury sustained, and which costs or injury, it should appear, might have been avoided by the tender or offer to perform. It is not necessary, however, to place the decision of this case upon this latter ground. The bill alleges that the notes were to be paid at McGregor's office; that respondent was a non-resident of the state, and had revoked the power of the agent to receive the money. He applied within a reasonable time after the maturity of the notes, at the proper place, to pay them, and demanded the deed. No person was there to receive the one, or execute the other. He was not bound to follow the vendor to his residence in New York, to make a tender. It was so far unreasonable, if not impracticable, to exact this, that equity and good conscience will not require it. Where the holder of an instrument is absent from the state when it becomes due, the maker may tender payment at the last residence or place of business of the payee before the instrument became due, and if there be no person authorized to receive the same, the maker may deposit the money with the clerk of the district court of the proper county, and the maker shall be liable for no interest from that time. Code § 958. Now, while this provision does not, in terms, apply where the payee has never had a residence in the state after the note was given, yet by a fair and equitable analogy, it might be well implied. In this case, the maker avers that he brings the money into court, and there is, therefore, a virtual deposit with the clerk, subject to the control of the payee. But without the aid of the statute, we do not think that the maker was bound to follow the payee, in order to proffer to him, in person, a performance of the contract; and that therefore, without reference to his offer to pay at the office of the agent, he is excused for not

making the tender. That offer is only material as showing: a disposition to fulfill his contract, and that he did not design to abandon it. ·We would not encourage a disregard of the· binding obligation of contracts,.nor sanction the idea that parties may at their own pleasure, at any time,. offer to per-- form them. By their agreements as to· time, as in all other things, they should be bound, and it is no part of our duty to make a contract for them. But where time is not made of the essence of the contract,.either expressly or by fair implication ; where the vendor holds the notes given for the purchase money, and .gives no notice, actual or construct-- ive, of his intention to treat the contract as abandoned; where there is no change in the circumstances of the parties, or· aught to indicate that any damages have resulted to the vendor from the delay, and the vendee, within a reasonable· time;. manifests a disposition to pay his money, and perform his contract, and follows it up by bringing his suit; we can find no case that would deny him relief, and we are unwill-. ing to. be the first to establish the precedent.

Decree affirmed.