Fisher *v.* Shaw.

MARK FISHER, *in Equity, versus* CHARLES SHAW *& als.*

A. conveyed to B. certain real estate subject to a mortgage given by himself to a third person. B. gave back a bond conditioned to reconvey to A. by quit-claim deed, a certain portion of the premises, whenever the latter should clear the remainder from incumbrance. B. afterwards obtained an assignment of the mortgage to himself. — *Held,* that the bond created no obligation on the part of B. to cause the mortgage to be discharged, and that it did not preclude him from subsequently acquiring any additional title to the premises.

C. agreed verbally with A. to take up this mortgage and to assign it to the latter, on payment of the amount by him within a specified time. C. obtained an assignment of the mortgage to himself, and before the expiration of the time agreed upon with A., assigned it to B., who still held the premises by the conveyance from A.: —

*Held,* that the contract was for the sale of an interest in lands, and not being in writing, that no action could be maintained thereon: —

*Held* also, that being without consideration, it was not a waiver of the right to a repayment of the mortgage within the time required by law to prevent a foreclosure: —

*Held* also, that as A. did not furnish the consideration paid for the assignment, there was no foundation for a *trust* in C. by implication of law: —

*Held* also, that the non-fulfilment of said agreement, by C. or his assigns, furnished no substantial basis for a suit under the head of *fraud.*

It may be true that a mortgage can be kept open, by the express agreement of the parties, or by facts and circumstances from which an agreement may be satisfactorily inferred, when but for such agreement it would be foreclosed; but in order to be an effectual *waiver* of the right to hold it foreclosed, it must be made by the mortgagee or some one having an interest under him.

If the interest in the mortgage has not been acquired at the time of the agreement, the mortgage is not so opened.

Whether such an agreement, made prior to the possession of an interest, but *followed* by an assignment of the mortgage, would suspend the foreclosure, *quaere.*

A waiver subsisting entirely in contract cannot be available if the contract is invalid.

If a party trusts to an invalid contract, a court of equity can grant him no relief against the other party for treating the contract as the law regards it. To do otherwise, and hold that the refusal of one party to execute a contract which has no legal validity, is a fraud upon the other party, would be for the Court to assume, under one clause of the statute, the very jurisdiction intentionally denied it under another clause.

This Court has equity jurisdiction, in all suits, to compel the specific performance of contracts in writing, &c., when the parties have not a plain and adequate remedy at law.

Fisher *v.* Shaw.

If the contract appears only in the condition of a bond secured by a penalty, the Court will act upon it as an agreement, and will not suffer the party to escape from a specific performance by offering to pay the penalty.

A written contract, by which a party agrees to do a certain act for the benefit of another, *or* to pay a certain sum as liquidated damages for the omission, as the party who is to do one or the other may elect, is not a case to which the jurisdiction of this Court, as a court of equity, will attach. By the contract itself, there is a plain and adequate remedy at law. The failure to perform either alternative cannot, of itself, confer equity powers.

BILL IN EQUITY.

This was a bill praying for relief and for an injunction, to which a general demurrer was pleaded.

The cause was heard upon bill and demurrer. All the material facts appear in the opinion of the Court.

*A. W. Paine,* for plaintiff, contended:—

A complete waiver of a written contract may be made by parol. *Woolam* v. *Hum,* 2 White & Tudor's Leading Cases, 553, and cases cited. There can be no doubt of this in equity, even though there may be in law.

The agreement for an extension is not in itself a contract, but, like a waiver of notice and demand on a note, is something extraneous to the note, and may be made by parol, and no consideration even is necessary.

The agreement for extension here, as alleged, was at least binding, and a court of equity will enforce the rights of the parties accordingly.

The knowledge of fraud binds defendants and they can claim no rights superior to what their assignor could. 2 Story's Eq. §§ 788, 790; *Evans* v. *Chism,* 18 Maine, 220.

When, as here, the extension has been granted, and that grant is by *parol,* surely the Court will not hold the party to a strict legal construction of the terms and mulct him with loss, if he has either honestly mistaken those terms, or, from the unwarrantable interference of others, has been prevented from complying with them. 2 Story's Eq. §§ 771, 775; *Getchell* v. *Jewett,* 4 Greenl. 350; *Rogers* v. *Saunders,* 16 Maine, 92.

This is in fact a case of one who in confidence of the parol

promise of another has omitted to perform an act, the non-performance of which, defendants allege, has led to a forfeiture of his legal rights. In such case the Court will not allow the party to suffer by reason of the want of good faith on the part of him in whom he trusted. And his relief will be equally strong against him who has participated in depriving him of his trust and knowingly taken advantage of him, as against the man who made the promise on which he relied. 2 Story's Eq. § 781.

*J. Crosby,* for defendants, among other points, argued:—

The understanding or agreement between Eben Wyman and Foss can avail nothing in any view:—

1. Because it is an attempt to create "a trust concerning lands by parol," contrary to R. S., c. 91, § § 31, 32; *Brown* v. *Lunt,* 37 Maine, 434.

2. It cannot be a trust by implication of law:—

Because the $500, was not paid by the first of January, 1855, nor tendered till long afterwards, viz., May, 1855. Wyman was under as much obligation to pay to the Shaws, Foss' assignees, as to Foss, if there had been no assignment. Foss was under no legal or moral obligation not to assign his interest by virtue of the Farrar mortgage; nor were the Shaws under any obligation not to take an assignment. The allegation of fraud in the matter is simply absurd. 2 Story's Eq. 771; *Lawrence* v. *Fletcher,* 8 Met. 347.

3. Because it is contrary to sound policy and the sound construction of our statutes upon mortgages and foreclosures, to permit a foreclosure to be waived by parol. 1 Hilliard on Mortgages, 400–1; *Pease* v. *Benson,* 28 Maine, 336.

Foreclosure must be according to statute. R. S., c. 125, § § 5, 6.

It makes confusion of the records, is equivalent to a parol conveyance, and therefore contrary to the statute of frauds. *Norton* v. *Webb,* 38 Maine, 218; *Lyford* v. *Ross,* 33 Maine, 197.

A foreclosure will not be opened, by reason of a *parol* agreement. 2 Hilliard on Mortgages, 139.

4. But if plaintiff relies upon "parol agreement" to extend the time of foreclosure, he must take the whole of it. Time was to be extended only "upon payment as aforesaid," viz.: $500 by first of January, which was not tendered till May 2d. *Lawrence* v. *Fletcher,* 8 Met. 347.

5. This parol agreement was utterly without consideration and void.   2 Hilliard on Mortgages, 316.

Specific performances of parol contracts will not be decreed, in any case, in this State, even in case of fraud, (*Wilton* v. *Harwood,* 23 Maine, 131, *Stearns* v. *Hubbard,* 8 Greenl. 320,) even though a parol contract be confessed in the answer.

A parol discharge, or waiver of a written contract, is no where allowed except in defence.   It cannot be the foundation of a bill for specific performance.   2 Story's Eq. 770, and note.

TENNEY, J.—It is alleged in the bill, that on June 16, 1851, Eben Wyman conveyed to Fayette, Brackley and Lorenzo Shaw certain real estate situated in the town of Dexter and county of Penobscot, and at the same time the defendants Fayette Shaw and Brackley Shaw, contracted with the grantor in a bond, to reconvey, by a quit-claim deed, a part of the premises described in the deed of conveyance, whenever he should clear the remaining portion of the premises, (which portion was designed to be sold absolutely to said Fayette, Brackley and Lorenzo,) from all incumbrance; also to quit-claim to said Wyman the store recently occupied by him, and the land on which it stands, within two years from the date of the bond, or to pay him the sum of three hundred dollars. It is further alleged in the bill, that at the time of the conveyance by said Wyman, and the making of the bond to him, certain attachments were existing upon the premises, made in suits against said Wyman, then pending in Court, in the county of Penobscot.

The plaintiff alleges in his bill, that at the time of the execution of the bond, a mortgage upon the portion of the premises, (which by the contract in the bond was to be recon-

veyed, upon the condition mentioned,) given by said Wyman to Isaac and Samuel Farrar, on March 18, 1845, was outstanding; and that the mortgagees had taken legal steps to foreclose the same; and that the time of redemption had almost expired; that Wyman had agreed with and procured one Simon Foss to advance the money thereon to the mortgagees, with the understanding and agreement, that the said Foss should take an assignment to himself, of said mortgage, but for the use of said Wyman, whenever he should repay, with interest, the sums so to be advanced to the mortgagees; it being also at the same time agreed, that said Wyman should pay said Foss the sum of $500 thereof, the first part of January, and the balance, of about $800, the first part of May then next; that, in said arrangement and agreement with Foss, it was agreed, that upon the payment as aforesaid, by said Wyman to said Foss, the time for the payment and the redemption of said mortgage was enlarged, so that it should extend to the first part of May aforesaid; that this agreement and arrangement, between said Wyman and Foss, was fully known to the defendants; that on January 2d, they purchased and procured said Foss to assign said mortgage to them, or for their benefit, by deed of that date, for the consideration of the sum of $70, in addition to the amount due thereon; and that they fraudulently and wrongfully procured said assignment and conveyance from said Foss to them, in order to deprive said Wyman of all his interest and right of redeeming the same.

And it is further alleged in the bill, that, on the second day of May aforesaid, being within the time agreed upon between Foss and Wyman for the payment of the amount due upon said mortgage, the said Wyman tendered, and was ready to pay to the defendants the whole of said amount, and thereupon requested them to receive the same and to discharge said mortgage, which they refused to do; that the said Wyman has repeatedly since that time, requested the defendants to release the premises, according to the contract in said bond, which they have wholly refused to do.

And it is further alleged in the bill, that the defendants have ever refused, and still do refuse to elect not to pay the sum of $300, provided in and by said bond to be paid for the store and lot, to said Wyman or his assigns; and they have been repeatedly and often requested to make such conveyance, but they have refused and neglected to do so; that all said attachments have long since been released and discharged, and that no other incumbrances exist upon the premises so sold to the said Fayette, Brackley and Lorenzo, other than the premises to be reconveyed by them on the performance by said Wyman of the condition mentioned, whereby the defendants are or should be released from the obligations mentioned in said bond; and that before the bringing of this bill, the plaintiff tendered and offered to pay the defendants the full amount due therefor and on account of the said mortgage, and thereupon demanded a deed of the premises described in the bond, to be reconveyed to said Wyman on the performance of said condition, and the defendants thereupon refused to make such conveyance.

It is alleged in the bill, that the said Fayette, Brackley and Lorenzo, on March 29, 1853, conveyed all their interest in the premises to the defendant Charles Shaw, and on March 30, 1853, said Charles conveyed one half thereof to the defendants, said Brackley and Fayette and William Shaw; and that said Wyman, on Feb. 10, 1854, by his writing on the back of said bond, signed and sealed by him, assigned the same to Nathan Wyman, who, on the same day, under his hand and seal, assigned the same to Elizabeth B. Wyman, and that the said Elizabeth, in like manner, on June 5, 1854, sold and transferred the same to the plaintiff.

The relief prayed for in the bill is, that the defendants be decreed to convey to the plaintiff the premises described in said bond, by a good and sufficient deed to convey the same, free from all said mortgages, and from all incumbrances by them or either of them created upon the same.

To the bill a general demurrer is filed.

At the time of the execution of the bond, the mortgage to

Isaac and Samuel Farrar was in existence, and to that the obligors were then strangers. Consequently, they were under no obligation by their contract, which was to give a quit-claim deed, on the performance of the condition by Wyman, to cause the mortgage to be discharged; and such quit-claim deed, given at any time before they became the assignees of the mortgage, would leave the same unextinguished. They did not preclude themselves in the bond from the exercise of the right of acquiring subsequently any other title in the premises, beside that obtained from Wyman. Such other title would not enure to a grantee of the same premises in a quit-claim deed delivered before the grantor acquired such other title. *Pike* v. *Galvin*, 29 Maine, 183.

The assignment of the mortgage to the defendants did not operate to the prejudice of the plaintiff or of Wyman. To acquire a perfect title to the premises, the mortgager, or the one claiming under him, was under the necessity of extinguishing the mortgage, whether it remained in the hands of the mortgagees, or was assigned to others.

If Foss had entered into a valid contract with Wyman, by which he was bound to discharge the mortgage, or release his right in the premises, to be afterwards acquired, upon the tender of payment of the amount due thereon, the assignees of Foss, with a full knowledge of the agreement between Wyman and Foss, at the time of the assignment to the defendants, would be under the like obligation. On the other hand, if Foss was not bound by such an arrangement and agreement, as is alleged in the bill, his assignees can be under no greater or further obligation.

The agreement between Wyman and Foss, relied upon in the bill by the plaintiff, touching the advancement of the money due upon the mortgage, and the waiver of the right to its repayment within the time required by law to prevent a foreclosure, are understood to have been verbal, and not in writing. By the allegations in the bill, this verbal agreement was made previous to the assignment of the mortgage to Foss; and the bill alleges no consideration for the agreement,

which was at most a contract for the sale of an interest in lands, and no action could have been maintained thereon. R. S., c. 136, § 1.

Again, the suit is sought to be maintained on the ground of a trust in Foss, which, on the assignment of the mortgage to them, with their knowledge thereof, they were bound to execute. The money was paid by Foss, in consideration of the assignment to him; it was his money, in which Wyman had no interest, and was under no obligation to refund it; and it cannot be treated as a loan to him. Consequently there was no trust, which arose or resulted by implication of law, as there might have been if the consideration paid for the assignment had been furnished by Wyman. The supposed trust, therefore, had no foundation, excepting in a verbal agreement; and was not created in the mode required by the statute, in order to have a binding effect. R. S., c. 91, § 31.

It is insisted, that the mortgage was open to redemption, till subsequent to the time when a tender of the whole amount due thereon was legally made, and a discharge of the same wrongfully refused by the defendants.

It may be true that a mortgage can be kept open by the express agreement of the parties, or by facts and circumstances, from which an agreement may be satisfactorily inferred, when it would be foreclosed, were it not for such agreement, express or inferable. But an effectual waiver of a right to hold the mortgage foreclosed, must be by the mortgagee, or some one having an interest under him. If the interest in the mortgage has not been acquired at the time of the supposed waiver, by the person, who, it is contended, has made it, the mortgage itself is not so opened that the time of redemption is extended beyond the legal period when it would be foreclosed. A valid contract, made by one who had agreed with the mortgager to take an assignment of the mortgage, to extend the time of redemption, followed by such assignment, might suspend the foreclosure accordingly; of this, however, we give no opinion. But if such contract is one, which cannot be enforced on account of a defect therein, which

renders it utterly invalid, it can have no such effect; the waiver, consisting entirely in contract, cannot be available if the contract fails. According to the allegations in the bill, the waiver relied upon, was before Foss became the assignee of the mortgage to Isaac and Samuel Farrar.

The plaintiff having no equities, which entitle him to redeem from the mortgage on the ground of trust, after the supposed foreclosure, he can have no more substantial basis for the suit under the head of fraud. There is no such allegation of fraud in the defendants, or in Foss, under whom they claim, as will entitle him to relief. At any time within three years after the mortgagees took measures to foreclose the mortgage, the same was open to redemption by Wyman, or whoever held his interest. Nothing is alleged to have been done by the defendants, or Foss, which could in the least abridge the mortgager's legal or equitable rights. If he trusted to a contract, which had no validity, to postpone the time of payment of the sum due upon the mortgage, he cannot have relief from the Court, on account of the other party's having treated the agreement as the law regards it. As was said in another case, " if it were a fraud upon one party for another to refuse to execute a conveyance, the effect would be to assume under that clause of the statute, the very jurisdiction, intentionally denied under another and a more appropriate clause." *Wilton* v. *Harwood*, 23 Maine, 131.

It is insisted, that the obligors in the bond having entirely failed to pay the sum of $300 for the store and the lot on which it stands, or to give a quit-claim deed thereof, the plaintiff is entitled to a decree for a specific performance of this part of the contract.

This Court have equity jurisdiction in all suits to compel the specific performance of contracts in writing, &c., when the parties have not a plain and adequate remedy at law. R. S., c. 96, § 10. If the contract appears only in the condition of a bond, secured by a penalty, the Court will act upon it as an agreement, and will not suffer the party to escape from a specific performance by offering to pay the

penalty. 2 Story's Eq., § 751. But in a written contract, by which a party agrees to do a certain act for the benefit of another, or to pay a certain sum as liquidated damages for the omission, as the party who is to do one or the other may elect, this is not a case to which the jurisdiction of this Court, as a court of equity, will attach. It is not an absolute engagement to do the act, instead of paying the equivalent agreed upon. The essential element in equity jurisdiction is wanting; for by the contract itself there is an adequate remedy at law. And the failure to perform, in either alternative, cannot of itself confer equity power.

This part of the bond was evidently a contract, by which the obligors could at their own option discharge their obligation by giving the deed, or pay the stipulated value of the land in money. The remedy at law is plain and adequate.

Many other objections to the maintenance of the bill are urged. Some are founded in a supposed want of right in the plaintiff, and others from the obligations of the defendants under the conveyance by Wyman and the bond to him, and subsequent transactions, alleged in the bill. We have deemed it unnecessary to give consideration to these supposed obstacles, inasmuch as the plaintiff has not presented a case upon the merits, which would entitle him to the relief sought, if the other objections could be overcome.

*Demurrer sustained. —*

*Bill dismissed with costs.*

HATHAWAY, APPLETON, GOODENOW and MAY, J. J., concurred.