THORNBURGH, RESPONDENT, v. FISH, APPELLANT.

[Argued June 23, 1891. Decided July 20, 1891.]

SPECIFIC PERFORMANCE—*Bond for a deed*—*Contract for sale of lands.*—Equity will regard a bond for a deed, which provides for the payment of a certain sum in case of a failure to convey, as a contract for the sale of lands, and decree the specific performance thereof, where the plaintiff, after receiving possession, agreed to convey the lands to third persons to whom he had delivered possession, and who had made valuable improvements, and who held plaintiff's obligations for warranty deeds. (*Kleinschmidt* v. *Kleinschmidt,* 9 Mont. 477, distinguished.)

SAME—*Form of instrument.*—In actions for specific performance of contracts for the sale of lands the form of the instrument to be enforced is immaterial, as equity will look to the intention of the parties and the nature of their acts, exercising a sound judicial discretion, controlled by the circumstances of each controversy.

SAME—*Principal and agent.*—Specific performance of a contract for the sale of lands, though in the form of a bond for a deed, was held properly decreed where it appeared that the defendant executed to the purchaser the bond in question at the request of his agents, one of whom afterwards took an assignment of the bond from the obligee to himself and tendered the unpaid purchase price, the jury having found that at the time of the sale there was no understanding or agreement between the defendant's agents and the purchaser that the purchase was to be made by him for their benefit, and that the price paid was the value of the lands.

TENDER—*Interest.*—A tender which is not kept good does not have the effect of stopping interest.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action for specific performance of a contract for the sale of lands. The cause was tried before BUCK, J. Plaintiff had judgment below. Modified and affirmed.

*Thomas J. Walsh,* for appellant.

I. The bonds in suit are identical in terms and language, except as to parties, dates, penalty, premises, and considerations with the bond involved in the case of *Kleinschmidt* v. *Kleinschmidt,* 9 Mont. 477. Upon the authority of this case the contracts proven are not such as entitle the plaintiff to a decree of conveyance.

II. The evidence discloses that Wallace and Thornburgh acted as agents for both parties to the bonds, and they are therefore voidable at the election of either party, and conveyance cannot be decreed upon a subsequent assignment to them of contracts entered into through a violation of their duty to

both Randall and defendant, or either of them. (*Farnsworth v. Hemmer*, 1 Allen, 494; 79 Am. Dec. 756; *Raisin* v. *Clark*, 41 Md. 158; 20 Am. Rep. 66; *Walker* v. *Osgood*, 98 Mass. 348; 93 Am. Dec. 168; *Bollman* v. *Loomis*, 41 Conn. 581; *Everhart* v. *Searle*, 71 Pa. St. 256; *Rice* v. *Wood*, 113 Mass. 133; 18 Am. Rep. 459; *Scribner* v. *Collar*, 40 Mich. 375; 29 Am. Rep. 541; *Bell* v. *McConnel*, 37 Ohio St. 396; 41 Am. Rep. 528; *Lynch* v. *Fallon*, 11 R. I. 311; 23 Am. Rep. 458.) The foregoing cases are all actions brought for commissions by the agent who acted for both parties. The courts uniformly hold that the agent in such case violates a rule of public policy, and is guilty of a constructive fraud upon his principal. Of course the agent, afterwards acquiring by assignment the contract so tainted, cannot have specific performance. It will be conceded that Wallace and Thornburgh could not buy on their own account, and being incapacitated from buying for themselves they cannot buy as the agent of another. (*Utica Ins. Co.* v. *Toledo Ins. Co.* 17 Barb. 132; *New York Cent. Ins. Co.* v. *National P. Ins. Co.* 14 N. Y. 85; *Wassal* v. *Reardon*, 11 Ark. 705; 54 Am. Dec. 245; *Mercantile Mut. Ins. Co.* v. *Hope Ins. Co.* 8 Mo. App. 411.) Even though the broker is instructed to sell at a fixed figure he cannot enter the service of the buyer or accept a commission from him, for it is still his duty to secure a purchaser at the price named, or a better one if offered. (*Webb* v. *Paxton*, 36 Minn. 532.) Stock brokers are subject to these rules as well as real estate agents. (*Taussig* v. *Hart*, 58 N. Y. 425.) Fish and Randall were both relying on the judgment, skill, ability, and discretion of Wallace and Thornburgh. That these duties were incompatible, and that the contract is voidable at the election of either party, admits of no discussion either upon reason or authority.

III. The evidence shows that the sale was made to W. W. Randall and the bonds were executed to another person, M. H. Randall. W. W., the man who intended to build, and not M. H., who never had any such intention, was the man represented to Fish as the buyer, and to whom he intended to sell because of his intention to build. Fish testifies that one of the moving causes of his signing the bonds was that the purchaser intended to build. Therefore conveyance to Marcy H. or his

assignees cannot be decreed because the grantor may select his grantee, and if it appear that the vendor is a different person than the one the agent represented him to be, the grantor may refuse to convey, and it is no answer even to say that it is a matter of indifference to the grantor, and that he would convey to one as soon as to another. (*Ellsworth* v. *Randall,* 78 Iowa, 141; 16 Am. St. Rep. 425.)

IV.   It is admitted in the pleadings and confirmed by the evidence that Wallace and Thornburgh were the agents of the defendants at the time the assignment was taken to plaintiff. No sale is made until the title deeds pass. (*Ide* v. *Leiser,* 10 Mont. 5; 24 Am. St. Rep. 17.) An agent will not be permitted to acquire an interest in the property while the contract of sale remains executory, the fact raising a presumption of an original agreement, which, for the protection of principals and to compel fidelity in agents, the law will not permit to be disputed. (*Bain* v. *Brown,* 56 N. Y. 285; *Cook* v. *Berlin W. M. Co.* 43 Wis. 433.) There is another reason besides the one suggested. The agent can never be permitted to gain an advantage over the principal by reason of knowledge he acquires through the agency. The transaction must "not admit of doubt or suspicion" in order that the plaintiff may have specific performance. (*Mayger* v. *Cruse,* 5 Mont. 485.) But the bare fact that an agent acquires an interest in the property within a short time after making a complete sale of it, casts a suspicion on the transaction. (*Abbott* v. *American H. R. Co.* 33 Barb. 578; *Smith* v. *Williams,* 12 Mo. 106; *James* v. *James,* 55 Ala. 525; *Johnson* v. *Kay,* 8 Humph. 142; *Shannon* v. *Marmaduke,* 14 Tex. 217.)

V.   There is no proof that the tender made by plaintiff, October 25th, was kept good. It did not, therefore, stop interest. (*Bissell* v. *Hayward,* 96 U. S. 580.)

*McConnell & Clayberg,* and *M. S. Gunn,* for Respondent.

I.   A court of equity can decree specific performance of the bonds in this case. (Pomeroy's Equity Jurisprudence, § 446; *Whitney* v. *Stone,* 23 Cal. 275; Story on Equity Jurisprudence, §§ 715, 751; *Ensign* v. *Kellogg,* 4 Pick. 1; *Logan* v. *Weinholt,* 7 Bligh N. S. 49; *Daily* v. *Litchfield,* 10 Mich. 29; *Dooley* v.

*Watson,* 1 Gray, 414; *Ewins* v. *Gordon,* 49 N. H. 444; *Fisher* v. *Shaw,* 42 Me. 32; *Dike* v. *Greene,* 4 R. I. 288; *Jendwine* v. *Agate,* 3 Sim. 141; *Willis* v. *Hall,* 7 Phila. 422.) Counsel for defendant cites the case of *Kleinschmidt* v. *Kleinschmidt,* 9 Mont. 477. By an examination of this case it will be seen that the statement therein, relied upon by counsel for defendant, is *obiter dictum,* as a tender of the amount due upon the bond was never made. Therefore the court could not have decreed specific performance, irrespective of the nature of the bond itself.

II. Was the firm of Wallace and Thornburgh, as the agents of the defendant, guilty of fraud? The court finds that they were not, and this finding is abundantly supported by the evidence. (*a*) There is no proof that the sale to Randall was for the benefit of Wallace and Thornburgh. The defendant, however, contends that there is a presumption that it was, from the fact of the assignment to plaintiff on January 3d. If this were so, it is overcome by the evidence and findings of the court. (*b*) The agency of Wallace and Thornburgh had terminated before the sale to plaintiff. This is evidenced by the admission in defendant's answer, and by the letter from defendant to Wallace and Thornburgh, dated May 20, 1889, and also follows as a conclusion of law. (*Higgins* v. *Moore,* 34 N. Y. 417; *Cook* v. *Berlin etc. Co.* 43 Wis. 442; Story on Agency, § 98.) (*c*) The testimony is conflicting upon the point as to the value of the lots at the time of the sale, but the jury found that the price received was the fair value at that time. Hence, the representation of Wallace and Thornburgh that the sale was an excellent one, is not shown to be false, but on the contrary, is shown to be true. (*d*) The statement relied upon by counsel for defendant, that the purchaser intended to build upon the lots, is also shown to be true, not only by the evidence introduced by plaintiff, but the deposition of M. H. Randall, a witness for defendant.

III. Did the defendant sign the bonds under a mistake of facts? The first mistake of fact relied upon is the alleged belief that the sale was an excellent one. The findings of the court and the evidence already referred to are sufficient answer to this point. The next mistake of fact relied upon is the alleged mistaken belief that the grantee in said contracts intended

to build upon the lots. This has already been answered. The
fact that the grantee did intend to build, but did not, does not
affect the right to specific performance. (*Morgan* v. *Porter*, 103
Mo. 135.)

BLAKE, C. J. — The complaint alleges that Fish was, on and
before the twenty-third day of October, 1888, seised and pos-
sessed of a certain tract of land which is described as lot No. 14,
in block L, of the Blake addition to the city of Helena, in this
State. That Fish and Marcy H. Randall entered October 23,
1888, into the following written contract respecting said land: —

"Know all men by these presents that I, Frederick S.
Fish . . . . am held and firmly bound unto Marcy H. Ran-
dall . . . . in the sum of thirteen hundred and fifty dollars,
. . . . to be paid to the said Marcy H. Randall, his executors,
administrators, or assigns, for which payment well and truly to
be made, I bind myself, my and each of my heirs, executors,
and administrators, firmly by these presents. Sealed with my
seal and dated the twenty-third day of October, A. D. one thou-
sand eight hundred and eighty-eight. The condition of the
above obligation is such that if the above-bounden obligor
shall, on or before the twenty-third day of October, A. D. one
thousand eight hundred and eighty-nine, make, execute, and
deliver unto the said Marcy H. Randall (provided, the said
Marcy H. Randall shall, on or before that day, have paid to
the said obligor the sum of six hundred and seventy-two dol-
lars [$672], in installments as follows, to wit: The sum of
three hundred and thirty-six dollars [$336] cash at the date
of execution and delivery of this bond, and the remaining sum
of three hundred and thirty-six dollars on or before the twenty-
third day of October, A. D. 1889, together with interest on
said remaining sum at the rate of ten per cent [10%] per
annum from date until paid, interest payable semi-annually;
and together, also, with all taxes that may be levied or assessed
against said premises during the term of this bond, the price by
the said Marcy H. Randall agreed to be paid therefor) a good
and sufficient conveyance in fee-simple, with full covenants of
warranty of [description of lot]. Then this obligation to be
void; otherwise to remain in full force and virtue."

This instrument was signed, sealed, acknowledged, and delivered by Fish, and recorded December 16, 1889, in the office of the county recorder of the county of Lewis and Clarke. And it is further alleged that Randall paid upon the execution of this contract to Fish the sum of $336; that Randall, in consideration of the sum of $375, sold, transferred, and assigned to Thornburgh, the plaintiff, his interest therein; and that the assignment was indorsed January 3, 1889, upon the contract. The complaint contains similar averments concerning lot No. 13, in the same block, but different amounts of money are named, and also alleges that the plaintiff has owned the contracts since the third day of January, 1889; that the plaintiff tendered October 25, 1889, to Fish, the sum of $728.25, being the amount of the unpaid purchase money of both parcels of land, and interest thereon, together with the taxes and assessments against the premises during the term of the contracts, and demanded from Fish the conveyance of the same; that Fish refused to receive said money and execute any deeds; that the plaintiff tendered January 24, 1890, to Fish the sum of $750, as such unpaid purchase money and interest, and also a deed, and requested him to execute the same; that Fish refused to receive the money or execute the deed. It is further alleged that Randall received October 23, 1888, from Fish the possession of the lots, and that Randall, immediately after the purchase of said contracts by the plaintiff, surrendered such possession; that the plaintiff sold, in the year 1889, the lot No. 13 to A. H. Nelson, and delivered the possession thereof; and that Nelson has erected thereon a residence and other buildings of the value of $3,500, and is living in the same, and holds the obligation of the plaintiff for a warranty deed to the land. It is further alleged that plaintiff sold September 12, 1889, to George H. Pew, said lot No. 14, and immediately delivered the possession thereof; and that Pew has erected a dwelling-house and other buildings thereon of the value of $6,500, and holds the obligation of the plaintiff for a warranty deed to the land; and that Pew sold, in the year 1890, the premises to Dr. Baldwin, who is now residing in said house, and in possession of the lot. It is further alleged that Fish has the title in fee-simple to said tracts of land, and is able to make deeds thereto. The prayer of the

complaint is for specific performance of said contracts, and that Fish be compelled to sell and convey said parcels of land to the plaintiff by good and sufficient deeds, upon the payment of said purchase money; and also for damages in the sum of $1,000. Copies of the contracts between Fish and Randall, and the assignments from Randall to Thornburgh, and the deeds which were prepared by the plaintiff for execution by the defendant, are annexed to the complaint as exhibits.

The answer admits that Fish signed the contracts, and that Randall made the written assignments of his interest therein to Thornburgh. It is averred that the plaintiff is a member of the firm of Wallace and Thornburgh, and that the defendant made September 15, 1888, the said Wallace and Thornburgh his agents to sell these parcels of land, with special instructions, to wit: Not less than $18 per front foot on Broadway for lot No. 13, and $17 per front foot on Broadway for lot No. 14; and that this agency was to continue until November 1, 1888. That the consideration in "the bonds for deeds" was below the amount named in the instructions, to wit, $17 per front foot on Broadway for lot No. 13, and $16 per front foot on Broadway for lot No. 14. That the defendant received October 23, 1888, at the city of Ann Arbor, State of Michigan, the contracts, with the following statement by the firm of Wallace and Thornburgh: "We consider this a most excellent sale, as the chances are that the remainder of the money will be paid within a few months, as the purchaser is thinking of building upon one of the lots." That the defendant "was not then in a position to know, and did not know" the value of the lots, "but relied upon the representation of his agents aforesaid, and under a mistake of material facts signed said bonds for deeds."

It is further alleged that "the mistake of facts aforesaid were that defendant, relying on said agents' representations, believed the sale of said lots to be a most excellent sale, and defendant at that time believed that the sale was *bona fide* and to the grantee in said bonds, and not for the benefit of his agents; feared that, if he repudiated said agents' action in selling said lots contrary to instructions, the grantee in said bonds would sue his agents aforesaid. . . . . That said representations were false, and . . . . were knowingly, falsely, and fraudulently

made by said Wallace and Thornburgh. . . . . That said pur-
chase of said lots was made for the benefit of said firm of Wal-
lace and Thornburgh, and that said Marcy H. Randall knew
nothing of the alleged sale of October 23, 1888, aforesaid, at
the time it was made. . . . . That said assignment was made in
violation of the trust and confidence reposed by defendant herein
in said firm of Wallace and Thornburgh, and in breach of the
fiduciary relations existing between said firm and defendant as
principal and agent, and without defendant's knowledge or con-
sent. . . . . That said firm of Wallace and Thornburgh, and
the plaintiff herein, in violation of the fiduciary relations exist-
ing between them as principal and agent, kept said assignment
to them secret, and concealed from defendant herein, although
frequently interrogated by defendant in reference thereto, until
the twenty-fourth day of October, A. D. 1889, at about the
hour of two o'clock in the afternoon of said day, when the de-
fendant for the first time discovered that said assignment had
been made, and that the representations made by said firm at
the time said bonds were signed were false, and that defendant
had signed said bonds under the mistake of facts aforesaid, when
defendant immediately rescinded said bonds." The prayer of
the answer is that "the bonds for deeds" be declared invalid,
and that the cloud upon the title of the defendant caused by the
record thereof be removed. The replication denies all the new
matter in the answer which is inconsistent with the complaint.

At the commencement of the trial the defendant "objected to
the introduction of any evidence, on the ground that the com-
plaint did not state facts sufficient to constitute a cause of action."
The objection was overruled, and the appellant contends that the
foregoing bonds are identical in terms with the instruments which
were construed in *Kleinschmidt* v. *Kleinschmidt*, 9 Mont. 477.

While intelligent criticism of the rulings of courts is always
proper and desirable, we respectfully remind the counsel for
the appellant that his language is unsuitable to the occasion, in
stating in his brief that he "is even at a loss to advise the
court upon what ground the trial judge disregarded the solemn
adjudication that 'such relief (a decree of conveyance) could
not be granted on the bond.'"

When the case at bar is compared with *Kleinschmidt* v. *Klein-*

*schmidt, supra,* the difference between the acts of the parties in relation to their respective agreements can be readily perceived. It appears in *Kleinschmidt* v. *Kleinschmidt, supra,* that the plaintiffs were husband and wife, and executed a deed to certain real estate, and delivered the possession thereof to the purchasers, with the intent to hinder and delay the creditors of the husband; and that there was an agreement in writing to reconvey the premises upon the payment of a specified sum. The court below held that the facts which are stated in the report of the case constituted an absolute sale, and not a mortgage; that no legal tender had been made of the amount which was stipulated in the bond; and that the plaintiffs, by reason of their attempt to hinder and delay such creditors, were not entitled to equitable relief. When the case was appealed to this court, our attention was directed by counsel for all the parties to these fundamental propositions, and we concurred therein, and for these reasons the judgment was affirmed. There are, however, observations in the opinion upon the effect of the bond which are not necessary to the decision, and cannot be approved. It is proper to remark that this part has been detached by the appellant, and made the ground-work of his argument. An inspection of the pleadings, which are fully presented, will show that the material issues which were tried in *Kleinschmidt* v. *Kleinschmidt, supra,* were not raised in this case.

The authorities seem to be harmonious in holding that the respondent, under the facts which are stated in his complaint, is entitled to a decree for the specific performance by the appellant of the contracts of sale or bonds for a deed. In *Plunkett* v. *Methodist etc. Society,* 3 Cush. 561, Mr. Justice Metcalf in the opinion said: "It was objected by the defendant's counsel that the bond is not a contract in writing to convey real estate; that the condition neither sets forth an agreement to give a deed of the estate mentioned, nor recites any agreement whatever, but merely is that, if the obligors shall convey when requested, the bond shall be void, and therefore that the court have no jurisdiction of the case; that the plaintiffs have an adequate remedy at law; and that the form of the bond shows that Brown relied on its penalty only, if the obligors should refuse to convey the land." The contention of the appellant herein is a

repetition of these positions.    What was the reply of the court?
"All these objections are answered by the decision in *Ensign* v.
*Kellogg*, 4 Pick. 1, made twenty-three years ago, in this county,
after a full argument."    The opinion in the last case was de-
livered in the year 1826; and, while the statement of the facts
is incomplete, this defect was cured by the report of *Plunkett* v.
*Methodist etc. Society, supra.*    The counsel maintained in *Ensign*
v. *Kellogg, supra,* that "this is a case in which the damages are
liquidated, and the defendants have an option to pay those dam-
ages or convey the land."    It was said *per curiam:* "We are
satisfied that no subject is more proper for the power of a court
of chancery in decreeing specific execution than a contract for
the sale of real estate; for what is agreed to be done ought in
conscience to be done. . . . . Nor is the remedy at law for dam-
ages complete or adequate; for the thing contracted for is wanted,
and the value in money may often be an unsatisfactory compen-
sation."    The doctrine of *Ensign* v. *Kellogg, supra,* has been
repeatedly applied.    Equity regards the intention of the par-
ties, and the nature of their acts; and the form of the instru-
ment concerning the sale of lands, which is to be enforced, is
immaterial.    The right to a rescission or specific performance of
such contracts is not absolute, but is a matter of sound judicial
discretion, which is controlled by the circumstances of each
controversy.    (*Fitzpatrick* v. *Beatty*, 1 Gilm. 454; *Dooley* v.
*Watson*, 1 Gray, 414; *Whitney* v. *Stone*, 23 Cal. 275; *Fisher*
v. *Shaw*, 42 Me. 32; *Barnard* v. *Lee*, 97 Mass. 92; *Ewins* v.
*Gordon*, 49 N. H. 444; *Stuyvesant* v. *Mayor*, 11 Paige, 414;
*Seymour* v. *Delancy*, 3 Cowen, 445; 15 Am. Dec. 270; *John-
son* v. *Hubbell*, 2 Stockt. Ch. 332; 66 Am. Dec. 773; *Young* v.
*Daniels*, 2 Iowa, 126; 63 Am. Dec. 477; *Brewer* v. *Herbert*,
30 Md. 301; 96 Am. Dec. 582; *Walker* v. *Douglas*, 70 Ill. 445;
*Brix* v. *Ott*, 101 Ill. 70; *Hennessy* v. *Woolworth*, 128 U. S.
438; *Cheney* v. *Libby*, 134 U. S. 68; 1 Story's Equity Juris-
prudence, §§ 715, 742, 751, and cases cited; 1 Pomeroy's Equity
Jurisprudence, § 446, and cases cited; *Baumann* v. *Pinckney*,
118 N. Y. 604.)

What excuse is urged by the appellant for his refusal to exe-
cute the deeds which were promised upon the payment of the
consideration which is specified in the bonds?    The jury found

"that Wallace and Thornburgh, at the time lots 13 and 14 were sold to Marcy H. Randall, had no understanding or agreement with said Randall, or his brother, W. W. Randall, that the said lots were to be purchased by him [Randall] for Wallace and Thornburgh;" and "that the price paid for lots 13 and 14, at the date of the sale to Marcy H. Randall, was the value of said lots at the time of said sale." The other findings by the court are in favor of the respondent upon the foregoing issues, and all of them are supported by testimony, and should not be disturbed. These facts, which stand in the record, render useless a review of the authorities, and deprive the appellant of every defense alleged in the answer. There are other questions which have been discussed by counsel, and carefully weighed, but, in the light of the issues and findings, they are irrelevant and immaterial.

There is an error in the computation of the amount which is to be paid to the appellant under the decree appealed from. The tender made by the respondent, October 25, 1889, of the sum of $728.25, on account of the unpaid purchase money, was not kept good, and did not have the effect of stopping interest. (*Bissell* v. *Hayward*, 96 U. S. 580.) This objection is not applicable to the subsequent tender to the appellant of the sum of $750, upon January 24, 1890.

It is therefore ordered and adjudged that the judgment be modified so that the defendant, upon the payment of the sum of $745.18 by the plaintiff, shall be required to execute the deed therein described, and that, when so modified, the judgment be affirmed.

*Modified and affirmed.*

HARWOOD, J., and DE WITT, J., concur.