## ARMSTRONG v. PIERSON.

In chancery, the respondent cannot pray anything in his answer, except to be dismissed the court; and if he seeks any relief against the complainant, he must do so by cross bill.

Without a cross bill and prayer for relief, if no decree can be made in favor of complainant, the court can do no more than dismiss the bill of the complainant.

Time is a circumstance of decisive importance in contracts for the purchase of real estate; and is always to be regarded of the essence of the contract, where the parties have so stipulated in the agreement.

Where a contract for the sale of real estate, after reciting the terms of the contract, provided: "That if the party of the second part, (the vendee) shall fail to make any of the payments pursuant to this agreement, or otherwise break the same, then the said party of the first part, (the vendor) shall be at liberty to consider the same forfeited on the part of the party of the second part, and the said party of the first part shall then, and in such case, have the right to enter in and upon the said premises in a quiet and peaceable manner:" *Held*, That the parties had not expressly made time of the essence of the contract: 2. That something more than mere non-payment by the vendee, was required to forfeit the contract.

Armstrong v. Pierson.

To rescind a contract, the law requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard; and it then gives the latter a reasonable time to comply with the contract.

Where a contract of sale of real estate provides that the vendor, on the failure of the vendee to perform, may consider the contract forfeited, some notice must be given by the vendor to the vendee, of the election to consider the contract void.

In such a case, unless it is shown that such notice has been given, or unless there has been some affirmative act by the vendor, to indicate unmistakeably to the vendee, the vendor's election to consider the contract forfeited, the contract is to be interpreted as an ordinarry one between the parties, in which it is not made to appear that they originally intended to provide, that the failure of the vendee to make payment at the appointed time, should terminate his rights; and time will not be considered, in equity, as constituting so essential a feature of the contract, as that the mere failure of the vendee, in point of time, will, without regard to other circumstances, deprive him of his right to enforce its specific performance.

Even where time has been made of the essence of the contract, the circumstances of the case, and the conduct of the vendor, may afford just ground for inference, that he has acquiesced in the delay, or waived the default.

When time has not been made of the essence of the contract, or where the parties show, by their subsequent conduct, that they do not regard the contract as terminated, by the failure to pay; or that, notwithstanding the failure, they regard it as still continuing, and to be carried out according to its terms, except in regard to time, they will be held to that rule of good faith, which, in the absence of actual agreement, may be indicated by the circumstances of the case.

Even where no sufficient cause or motive for the failure to pay, is shown, or where the default has not been waived or acquiesced in by the vendor, the question with the chancellor will be, whether, under the circumstances, the vendor, in good conscience, can refuse performance, and whether the vendee may not, in good conscience require it.

While a suit by the vendor, to recover possession of real estate, after default by the vendee to make payment according to contract, has been held to operate as notice of the vendor's election to rescind the contract, and while it may reasonably be allowed to amount to the positive act requisite to manifest the vendors's intention to rescind, yet such a suit will not be considered of any greater efficacy in manifesting the vendor's election or intention, than actual notice thereof to the vendee.

The fact that a vendee of real estate has taken possession, and made lasting and valuable improvements on the premises, before default, with the knowledge of the vendor, whereby the value of the property has been increased in good faith, greatly strengthens the claim of the vendee to a decree for the specific performance of the contract.

Armstrong v. Pierson.

Notice of the rescision of a contract to sell real estate, however given, without an order to cancel or deliver up the notes for the purchase money, and to place the vendee in as good condition as he was before the agreement, by refunding to him the purchase money paid, with interest, is insufficient to rescind the contract, and terminate the rights of the vendee in the property.

Section 1940 of the Code, which provides that the mode of redemption of real estate sold on execution, is by paying the money into the office of the clerk of the District Court, for the use of the persons thereto entitled, was designed for the benefit of the debtor, and he may redeem in that manner, if he prefers it.

In receiving the money, the clerk is only the agent of the party entitled thereto.

Whenever a payment to the clerk would be good, a payment or tender to the party entitled to receive the money, is equally valid.

Where a vendee of real estate, which had been sold on execution under a judgment in favor of the vendor, and bought in by him, tendered to the vendor, before the time for redemption had expired, the amount for which the same sold on execution, with interest, and also the purchase money yet unpaid, with interest; and where the vendor declined to receive the money, alleging as a reason, that he did not know what amount was due him—that his attorney had the papers, and had been computing it—that he could not tell what to do about receiving it, till he had seen him, which he would do on the following Monday, or in two or three days, and would then let the vendee know—and that he did not know whether it was right he should receive it, but if his attorney said he should, he supposed he should have to receive it; *Held,* 1. That the tender was sufficient; 2. That the refusal to receive the money, was qualified and partial, and not absolute.

Where a complainant in chancery, who is seeking the specific performance of a contract for the sale and conveyance of real estate, has not shown himself ready and prompt to fulfil his part of the agreement, and no excuse is shown for his delay and omissions, the circumstances of the case, and the conduct of the respondent, furnish the only ground of equitable relief in favor of the complainant.

*Appeal from the Des Moines District Court.*

FRIDAY, DECEMBER 11.

IN EQUITY. The complainant seeks to enforce the specific execution of an agreement to convey to him certain lots, six in number, in the city of Burlington; to set aside a sheriff's sale of the lots, under a judgment in favor of

respondent, and to redeem the same from the said sale; and for perpetual injunction against two suits at law, commenced by respondent, to recover possession of the lots.

The lots were purchased from respondent by complainant, on the 18th of June, 1851, for the sum of $700, for which he executed his note, payable in two years from date, with interest, payable annually, at the rate of ten per centum per annum. The written agreement between the parties, after reciting the terms of the contract, sets forth that: "If the party of the second part, (Armstrong,) shall fail to make any of the payments, pursuant to this agreement, or otherwise break the same, then the said party of the first part, (Pierson,) shall be at liberty to consider the same forfeited on the part of the party of the second part; and the said party of the first part shall then, and in such case, have the right to enter in and upon the premises in a quiet and peaceable manner."

On the 24th of November, 1852, the respondent recovered a judgment against the complainant, in the district court, for the sum of $394 05. Execution issued on this judgment, was by direction of respondent, levied on the premises in controversy, and on the 12th of March, 1853, he purchased them, at the sale by the sheriff, for the sum of $421 39. On the 12th of April, 1853, the respondent commenced an action against complainant, to recover the possession of the lots. On the 11th of March, 1854, the complainant tendered to respondent the purchase money and interest, for the lots, and at the same time tendered the money, and offered to redeem the same from the purchase made by respondent, at the sheriff's sale. The amount tendered was $1800, which respondent refused to receive. On the 20th of March, 1854, respondent obtained from the sheriff, a deed of conveyance for the lots, under the purchase made by him at the sheriff's sale. On the 12th of April, 1854, respondent commenced a second action against complainant, to recover the possession of the lots. It does not appear, from the record, that either of these actions were prosecuted to judgment. On the 19th

of April, 1854, this action was commenced by complainant, and an injunction was granted by the district court, to stay proceedings in the actions at law to recover possession of the premises, until the matters alleged by the complainant, in his petition, should be heard in equity.

The equitable grounds urged by complainant in support of his petition for relief, and for a decree in his favor for the specific execution of the agreement, are as follows:

1. That the respondent has never elected to consider the contract forfeited; that he has never notified complainant of any such intention on his part; and that the same still remains in full force, in no wise canceled, set aside, forfeited, or vacated.

2. That the note given by him for the purchase money, is still outstanding against him; and that it has never been delivered up to be canceled, nor has complainant been, in any manner, indemnified against the same.

3. That complainant, under the contract of purchase, took possession of the lots, and made permanent and valuable improvements thereon, to the amount, in cost and value, of $1,700; and that complainant has used and occupied the premises as his homestead, his dwelling house being erected thereon, and he having been the head of a family since August, 1850, and a married man until July, 1853.

4. That complainant has tendered to respondent the whole of the purchase money and interest, due on the lots, and offered to lift his note; and had, also, within the time limited by law, tendered to respondent, the amount by him bid for the lots, at sheriff's sale, with interest; that respondent refused to receive the same, obtained a deed from the sheriff, and brought suit for the possession of the lots; and that said complainant still offers to pay the same, and to bring the money into court.

The respondent on his part, admitting the execution of the written agreement and the promissory note, claims that the contract was forfeited by complainant, by the non-payment of the money due on the note; and that the suit

brought for the possession of the lots, was notice to complainant, of respondent's intention and determination to forfeit the contract. He denies that any legal tender was made to him by complainant, of the purchase money of the lots, and claims that complainant could only redeem them from the purchase made at the sheriff's sale, by paying the money to the clerk of the district court, for the use of respondent.

It appeared in evidence, that, at the time of the tender to defendant of the $1,800, he refused to receive it; that he said he did not know whether it was right that he should take it, and he could not tell what to do about it, until he saw his attorney, who had all the papers, and had been computing the amount; that he would see him on the following day, or in a few days, and let complainant know; and that he did not know whether it was right he should receive it, but if his attorney said he should, he supposed he should have to receive it. It was further proved, that in April, 1854, five of the lots were worth $250 each, and the sixth was worth $300; that the improvements on the lots had cost about $2,200, and, owing to the rise in the price of labor and materials, the same were, in April, 1856, worth $3,200; and that complainant had occupied the dwelling house on the premises, since May, 1852. In May, 1853, Rand & Co. recovered judgment against complainant, for lumber and materials used in the construction of the house on the lots, which judgment was a lien on two of the lots, and upon the interest of defendant therein, to the amount of $316 58, and which judgment was paid by defendant, to Rand & Co.

The district court rendered a final decree at the October term, 1856, in favor of defendant; dissolved the injunction, and dismissed complainant's bill; rescinded the contract between the parties, and canceled the note given by complainant for the purchase money of the lots; and it was further decreed, that complainant's claim to the real estate and improvements thereon, be canceled and extinguished; that the legal and equitable title to the lots and improvements, was in the defendant; and that he

have the immediate possession thereof; and all claims held by defendant against complainant, were decreed to be satisfied and extinguished.    The complainant appeals.

*C. Ben Darwin*, for the appellant, relied on the following authorities: *Young* v. *Daniels*, 2 Iowa, 126; *Brink* v. *Morton et al*, 2 Ib., 411; *Mathews* v. *Gillis*, 1 Ib., 249; 1 McLean, 395; 14 Peters, 176; *Gibbs* v. *Champion*, 3 Ohio, 335; *Harris* v. *Troup*, 8 Paige, 423; *Remington* v. *Israel*, 5–6 Ohio, 477; 1 McLean, 54; 2 Gilm., 327; 11 Ills., 666; 4 Monr., 198; 6 Wheat., 533; 6 Monr., 368; *Henry* v. *Grady*, 5 B. Monr., 450; 4 Bibb, 453; *Seton* v. *Slade*, 2 Lead. Cas. in Equity, 26.

*Starr & Phelps*, for the appellee.    [No brief of counsel for the appellee, was found upon the files.]

STOCKTON, J.—The decree of the district court, so far as it was in favor of the defendant, for the recision of the contract and cancellation of the note—for the extinguishment of complainant's claim to the real estate and improvements, and for vesting in defendant the title and possession of the property—was rendered as upon the prayer of defendant for relief, upon cross-bill.    In this instance, however, no relief was in any manner prayed by defendant, by cross-bill or otherwise.    The powers of the court of chancery were not invoked by him; and although, when it has acquired cognizance of a suit, as for the purpose of discovery, it will, in order to prevent multiplicity of suits, entertain it for the purpose of relief, in most cases of fraud, account, accident or mistake, yet it will only administer relief where its aid is properly invoked, and its jurisdiction acquired in a regular manner.    By the answer of defendant, it is prayed only that he may be dismissed with his costs.    No relief is asked for by him.

The practice is well settled in chancery, that the defendant cannot pray anything in his answer, except to be

dismissed the court; and if he seeks any relief against complainant, he must do so by cross-bill. *Compton* v. *Comer*, 4 Iowa, 577 ; 2 Barbour's Ch'y Practice, 126; Daniels' Ch'y Practice, Ch. 31; *Morgan* v. *Tipton*, 3 McLean, 339 ; *McConnel* v. *Hodson*, 2 Gilman, 640.

In this case, if the court considered that the contract between the parties should be rescinded, and that defendant was entitled to a decree for the title and possession of the property, with the improvements placed upon it by the complainant, we see no way in which such relief could have been decreed in his favor, unless he had prayed the same ; and he could not pray such relief, except by cross-bill, to which the complainant was entitled to make answer and defence. Without such cross-bill and prayer for relief, if no decree could be made in favor of complainant, all that the court could do, would be to dissolve the injunction, and dismiss the bill. It is time enough to grant relief to a defendant, when he prays for it: not before.

The counsel on both sides, have given much of their labor in the argument, to the question whether or not time had, by the parties, been made of the essence of the contract, in such a sense, as that upon default by the complainant in making payment, without any just excuse, and without any waiver, afterwards by defendant, the court ought to interfere for his relief. Time is a circumstance of decisive importance, in contracts for the purchase of real estate, and is always to be regarded as of the essence of the contract, where the parties have so stipulated in their agreement. In *Benedict* v. *Lynch*, 1 Johnson's Chy. 570, the contract was, that if the vendee failed in the payments, or any of them, the agreement was to be void. In *Scott* v. *Fields*, 6–7 Ohio, 443, if the vendee failed to make the payments, he was to forfeit a payment made, and to have the agreement considered null and void. In these cases, it was held by the court, that the parties had expressly made time of the essence of the contract. In *Davis* v. *Stevens*, 3 Iowa, 185, the written agreement declared in so many words, that time was of the essence of

the contract, and a specific performance was refused.   In *Young* v. *Daniels*, 2 Iowa, 126, the agreement was, that "in the event of non-payment of the said sum of money, or any part thereof, at the time limited, the vendor may elect to consider the contract at an end, and the vendee shall be considered the tenant, &c.;" and it was held that time had not been made of the essence of the contract, by the express stipulation of the parties.

In the case now before us, the agreement was, that if the vendee failed to make any of the payments, pursuant to the agreements, or should otherwise break the same, the vendor was at liberty to consider the same forfeited, and had the right to enter upon the premises in a quiet and peaceable manner.   The terms of the two contracts are identical in meaning, though not in language; and we have no hesitation or difficulty in deciding, on the authority of *Young* v. *Daniels*, that the parties, in this instance, have not expressly made time of the essence of their agreement.   Something more was required than mere non-payment by complainant, to forfeit or put an end to the contract.

In *Canfield* v. *Wescott*, 5 Cowen, 270, the contract contained a clause that if the vendee failed in performing any of the covenants, the contract should become void and of no effect; and it was held that this provision was for the benefit of the vendor, who might consider it void at his election; but that it was not absolutely void.   Of the election to consider the contract void, some notice must be given by the vendor, to the vendee.   To rescind a contract, the law requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives him a reasonable time to comply.   *Higby* v. *Whittaker*, 8 Ohio, 198.

Unless it is shown that such notice has been given, or unless there has been some affirmative act by the defendant, to indicate unmistakeably to the complainant, the vendor's election to consider it forfeited, the contract, in this instance, is to be interpreted as an ordinary contract

between the parties, in which it is not made to appear that they originally intended to provide, that the failure of the vendee to make payment at the appointed time, should terminate his rights. In such case, time will not be considered, in equity, as constituting so essential a feature of the contract, as that the mere failure of the complainant in point of time, will, without regard to other circumstances, deprive him of his right to enforce its specific performance.

Cases are cited in which, although time has been made of the essence of the contract, a default at the day has been excused or waived. The circumstances of the case, and the conduct of the vendor, may afford just ground for inference, that he has acquiesced in the delay, or waived the default. The party seeking for specific performance, may show that he has used due diligence, or *if not*, that his negligence arose from some just cause, or has been acquiesced in by the vendor. *Benedict* v. *Lynch*, *supra*; *Seton* v. *Slade*, 7 Vesey, 265. Where time has not been made of the essence of the contract, or where the parties show by their subsequent conduct, that they do not regard the contract as terminated by the failure to pay; or that, notwithstanding the failure, they regard it as still continuing, and to be carried out according to its terms, except in regard to time, they will be held to that rule of good faith, which, in the absence of actual agreement, may be indicated by the circumstances of the case. Even where no sufficient cause or motive for the failure to pay is shown, or where the default has not been waived or acquiesced in by the vendor, the question with the chancellor will be, whether under the circumstances, the vendor, in good conscience, can refuse performance; and whether the vendee may not, in good conscience, require it. The cases are almost without number, in which the vendee of land, though partially or wholly in default in the payment of the price, has been allowed to enforce performance against the vendor. And so the vendor, after failure on his part, and after a suit commenced, or a judgment ob-

tained against him on the contract, has been admitted to have an equity for its enforcement.  *Henry* v. *Grady* 5 B. Monroe, 450.

It is argued that the levy upon and sale of the lots by the sheriff, March 12th, 1853, and the suit to recover possession, commenced April 12th, 1853, were notice to the complainant of defendant's election to consider the contract at an end.   The sale of the lots under execution, so far from indicating that defendant considered the contract, or complainant's rights under it, at an end, would seem to show rather, that defendant supposed complainant had still some right to the lots, which he wished to extinguish by the sale.   If complainant had forfeited his right to the lots, and the title to them had become vested in defendant, by reason of complainant's default in making payment, there was surely very little propriety in selling them on execution, to give defendant a better title.

A suit by the vendor to recover possession, after default by the vendee to make payment according to contract, has been held to operate as notice of the vendor's election to rescind the contract; and it may reasonably be allowed to amount to the positive act required, to manifest the vendor's intention to rescind, referred to in *Higby* v. *Whittaker, supra*.   It will not, however, be considered of any greater efficacy in manifesting the vendor's election or intention, than actual notice thereof to the vendee; and such notice, however given, without an offer to cancel or deliver up the notes for the purchase money, and to place the vendee in as good condition as he was before the agreement, by refunding to him the purchase money paid, with interest, is clearly insufficient to rescind the contract and terminate the rights of the vendee in the property.

In *Gibbs* v. *Champion*, 3 How, 335, after default in the first payment, a tender of the whole amount due was made, when the last payment fell due; and it was held that, as the vendor had never offered to return the notes, nor taken any step to exonerate the vendee from his liability thereon, the contract remained executory and in full force when

the tender was made, and the vendor was required to execute it. So in Young v. Daniels, supra, the fact that the vendor, while insisting that the contract was forfeited for non-payment, held on to the notes, was accounted a material circumstance in favor of the vendee, going to show that the contract was neither forfeited nor abandoned, and that he was entitled to demand its specific execution. The defendant in this case, did not offer to surrender the note of complainant, but retained it, and even in his answer, proffers to return it only on condition of his obtaining possession of the lots, or in such manner as the court may direct.

It further appeared in evidence, that the complainant took possession of the property at the date of the contract, and that he made permanent and valuable improvements thereon, estimated, by one of the witnesses, to have cost, in March, 1855, twenty-two hundred dollars, and by another witness, as worth, in April, 1856, thirty-two hundred dollars. The complainant, after taking possession, had made the improvements with the knowledge of defendant, before default. Where such is the case, and the improvements are lasting and valuable, without deciding, at present, the question whether the defendant must make compensation for them, before he can forfeit or rescind the contract, it would, nevertheless, seem to us nothing more than equitable, that he should have such compensation; and where the value of the property has been thus increased, in good faith, this fact, in our opinion, greatly strengthens the claim of the vendee to a decree for specific performance.

In Remington v. Kelly, 6–7 Ohio, 447, the court gave it as their opinion, that if a vendee takes possession, with the consent and acquiescence of the vendor, and makes lasting and valuable improvements, it would seem to be equitable that the vendor, before he should be permitted to rescind the contract, should make compensation for such improvements. This was in a case where there had been notice of forfeiture for non-payment, and a tender of the notes, which being refused, were deposited in the

hands of a third person, for the use of the vendee. So, it has been held by the Court of Appeals of Kentucky, that for improvements made by a vendee, under the faith of a contract of purchase, while the premises are in his possession, as well as for the purchase money paid, he has a lien upon the property improved, and ought not to be compelled to part with his possession, until he is paid and indemnified. In the case of the recision of a contract, it is well settled, (say the court), that the court ought to place the parties back, in *statu quo* as near as can be equitably done. *Griffith* v. *Depew*, 3 A. K. Marshall, 177. This view of the law, is sustained by the ruling of the court in *Brink* v. *Morton*, 2 Iowa, 411, in which it is held, that where time had not been made of the essence of the contract, the vendor, in order to rescind, upon default of payment, must place the vendee in *statu quo*, by refunding the money paid, delivering up the unpaid note, and making reasonable compensation for improvements put upon the premises, with the acquiescence of the vendor. See *Putnam* v. *Ritchie*, 6 Paige, 390.

The case of *Gillett* v. *Maynard*, 5 Johnson, 85, cited by defendant, we do not consider applicable to the present case. That was a suit at law, to recover back money paid upon a parol contract for the purchase of land, which had never been fully executed, and to recover compensation for improvements made by the vendee while in possession of the land. The court held, that the contract having been rescinded, the vendee was entitled to recover for the purchase money paid, but that if he voluntarily abandoned his contract, without any stipulation as to the improvements, he must be deemed to have waived all claim to any compensation for them. See also, *Frear* v. *Hardenburg*, 5 Johnson, 272; *Hollis* v. *Edwards*, &c., 1 Vernon, 159; Willard's Equity, 308, 312.

It is urged by defendant, against complainant's right to have any compensation for the improvements upon the

premises, and against the propriety of holding that such improvements strengthen the equitable claim of complainant to a decree: 1. That the improvements were not made by complainant, but were made with the money of defendant, and were paid for by himself, and not by complainant; and 2. That defendant had caused execution on the judgment in his favor against complainant, to be levied on said improvements, and had purchased the same at sheriff's sale; that by virtue of the sheriff's deed, he had acquired the title to said improvements, and held the same; and that complainant has no claim upon or for the same, or the value thereof.

To these positions of defendant, it may be replied: *First,* That the evidence shows conclusively, that the improvements upon the premises, were placed there by complainant. There was no attempt by defendant to show, that any of them were made by him, or paid for by him; except that the judgment of Rand & Co., against complainant, for three hundred and twenty-nine dollars and fifty-three cents, for building materials, used in the erection of the dwelling house on the premises, which, to the amount of three hundred and sixteen dollars and fifty-eight cents, was declared a lien on all the right, title and interest of both complainant and defendant, in two of the six lots, the subject of the present suit, was paid by defendant to Rand & Co. *Secondly.* One of the purposes of complainant's bill, and the prayer thereof, is, among other things, to have the court set aside, and declare null and void, the sheriff's sale and conveyance to the defendant, of the property in controversy, for reasons set forth in his petition; or, if the court cannot grant him such relief, that he may be, at least, by decree of the court, allowed to redeem the property from the sale by the sheriff, by virtue of his tender and offer to redeem, made to defendant, March 11, 1854.

The question as to the irregularity of the sale of the premises by the sheriff, and the right of complainant to have the same vacated and set aside, we do not consider

at present, but proceed to inquire into the sufficiency of the tender, and the right of complainant to redeem the property from the purchase made by defendant at sheriff's sale.   The objection taken in the argument to this tender is, that it was not made in the manner prescribed by statute, by paying the money into the clerk's office, for the use of defendant.   We think this objection is not well taken, and that the tender of money to the defendant, was sufficient for the purpose for which it was intended.   The clerk, in receiving the money, is only the agent of the party entitled thereto.   The execution plaintiff is the principal.   Whenever a payment to the clerk would be good, a payment or tender to the party entitled to receive the money, is equally valid.   The provision of the statute, allowing payment to be made to the clerk, is intended for the benefit of the debtor, and he may make redemption in that mode, if he prefers it.   We know of no reason or principle, however, which should render the payment or tender of the money to the judgment plaintiff, invalid— especially, where it is not refused on the ground that it ought to be paid into the clerk's office for his use.   The money tendered, was for the double purpose of redeeming the property from the sale made by the sheriff, and to discharge the note given to defendant, for the purchase money of the lots.   This fact, in our view of it, furnishes a further illustration of the propriety of the money for the redemption of the lots, being tendered to the defendant, and not paid to the clerk.

The defendant refused to receive it, when offered to him, but it was a qualified and partial refusal, and not an absolute one.   He undertook to reserve to himself the privilege of refusing the money absolutely, if his attorney so advised; or of taking it, if the tender was good, and any advantage was to accrue to him by so taking it.   He said something about not knowing what amount was due to him; that his attorney had the papers, and had been computing it, and he could not tell what to do about receiving it, until he should see him, which he agreed he

would do on the following Monday, or in two or three days, and would then let complainant know; and that he did not know whether it was right that he should receive it, but if his attorney said he should, he supposed he should have to receive it. Here was no refusal to receive the money for the redemption of the property, for the reason that it should have been paid into the clerk's office, for his use. There was no refusal to receive payment of the promissory note for the purchase money, on the ground that the contract was forfeited, or had been rescinded.

It is, perhaps, a party's misfortune, that he cannot have an attorney at all times, at hand to advise him as to his acts. But if defendant was ignorant of his legal rights, or did not know the exact amount of money due him from complainant, he knew, at least, whether or not he was willing that complainant should redeem the lots from the sale made by the sheriff; and whether he elected to consider the contract forfeited, by reason of the non-payment, and whether he had, in any manner, undertaken to rescind the same. Unless, then, he intended that his attorney should think, and speak, and act for him, it was necessary that he should decide for himself, when the money was tendered, whether he would receive it or not; and if he alleged any reason for refusing it, that he should be ready and willing to abide by that reason and decision. If he placed his refusal upon any such ground, it was easy for him to say, that he refused the money tendered for the redemption of the lots, because it should have been paid into the clerk's office for his use; or, that he refused the money tendered in payment of the note, on the ground that the contract of sale was forfeited, and was no longer in force.

He was not bound to give any reason for declining to receive it, and a simple refusal, without any reason, would have covered the whole ground. When, however, he declines to receive it, for the alleged reason that he does not know the exact amount due,—that his attorney had the pa-

pers, and was computing the amount, &c.,—that he did not know whether it was right that he should receive it, without consulting him,—and, especially, when he promised to see his attorney, and then let the other party know whether or not he would accept the tender,—the complainant was authorized to infer, that he would have received the money, if so advised by his attorney, if the exact amount due had been tendered; or, at any rate, the amount found to be due by the attorney's computation. Whether he consulted his attorney or not, does not appear, but he failed to comply with his promise to inform complainant whether he would accept the money tendered or not; and, instead of so informing him, he procures the sheriff to make him a conveyance of the lots. Under these circumstances, although some show was made by him of standing upon all his legal rights, in refusing the money, the defendant cannot object to the inference, that he did not consider the contract forfeited, and that he refused the money, because he did not know whether the amount tendered was the exact amount due him.

We are thus brought back to the question with which we started out: Is complainant, in good conscience, entitled to claim, against defendant, a decree for the specific execution of the agreement to convey these lots? The considerations upon which this question is to be decided, are numerous and important; and while we admit that our minds are not free from doubt and difficulty, we have not been able to arrive at the conclusion, that the contract between the parties was forfeited or rescinded, or that it was not in full force on the 11th of March, 1854, when the tender was made. We are reminded of the principles on which the relief prayed, is administered in courts of equity: That a specific performance is not a matter of right in either party, but is granted or withheld, according to the circumstance of the case, in the sound discretion of the chancellor, guided and controlled by the general rules and principles of equity jurisprudence, (*Young* v. *Daniels, supra*); that compensation, not forfeiture, is the doctrine of courts of equi-

ty; that a loose administration of the law, is nothing more nor less than a loose morality, which should not begin with courts of justice, where the law is designed to be administered as a help to morality, and as an example to the community; and that one seeking a specific performance, must show that he himself has been ready, desirous, prompt and eager to discharge his part of the obligation.

The complainant has not shown himself ready and prompt to fulfil his part of the agreement. The payments were not made at the day, and no such excuse for the delay and omission, has been shown, as under other circumstances, might be required of him. In the absence of such excuse and show of diligence, the circumstances of the case, and the conduct of defendant, furnish the only ground of equitable relief in favor of complainant. While the contract was still in force, neither abandoned, forfeited nor rescinded, the complainant tenders to defendant the money, sufficient in amount, not only to redeem the property from the purchase at sheriff's sale, and to pay the consideration money and interest, but to pay and satisfy, also, the judgment of Rand & Co., assigned to defendant, and which was a lien on the property. The defendant had not, at the time this tender was made, taken the necessary steps to rescind the agreement, by divesting himself of its fruits, and offering to indemnify the complainant against any loss to be incurred by him in its rescision. If the premises had remained without improvements, or if defendant, on failure of complainant to pay, had offered to deliver up the note, and to pay him for his improvements, thus rescinding the contract, and placing the parties back, in statu quo, as near as possible, there would be no ground on which complainant could base his claim for a specific performance.

We remark, in conclusion, that it does not appear that defendant has, in any manner, disabled himself from making the conveyance; nor that complainant has abandoned the contract, or in any manner assented to its rescision; it does not appear that complainant intended to lie by, until he should see whether the contract would prove a gaining or

Armstrong v. Pierson.

losing bargain, and, according to the event, either abandon it, or considering the lapse of time as nothing, claim a specific performance, notwitstanding the default. He had built his house upon the lots, and occupied it as his homestead, increasing the value of the property some three thousand dollars. We must take the tender of the consideration money, to have been made by him in good faith ; and are constrained to place some stress upon the fact, that defendant, though he expressed his desire to consult his attorney before receiving it, manifested some disposition or intention to stand upon his legal rights, yet he did not decline to receive it, on the ground that the contract was rescinded and at an end, and by his language and conduct, gave to complainant reason to suppose, that he considered it still in force, and that the money tendered was refused, only because he did not know whether it was the exact amount that was due him on the contract.

For the reasons we have endeavored to set forth above, the decree will be reversed, and the cause remanded to the district court, with directions to enter a decree in favor of complainant, in conformity to this opinion.

Decree reversed.

WOODWARD, J.—Whilst I concur in the result arrived at in this cause, I wish to say, that some of the. views suggested in the reasoning—and which enter into the reasoning of most of the cases—do not command my concurrence. The point upon which I wish not to be concluded by any of the cases, including the present, is the effect given to, and the use made of, the proposition, that " time is not of the essence of a contract, in equity." This is often taken to mean, practically, that time is of no consequence, and that the vendee may perform pretty much when he pleases. The idea is not thus plainly expressed, but such is the practical and real effect of the views taken. These views represent that the parties must positively make time of the essence, expressly providing for forfeiture in case of non-performance.

As at present informed, I believe the true doctrine to be, that time is always a part of the contract, and to be observed, unless the vendee shows an excuse—a reason— why he should not be held to it. The books mean only what they say—that time is not so of the essence, that it cannot be dispensed with, whereas, a large number of the cases are decided, (lightly, and without due reflection, as I think), upon the ground that it is of no importance, unless expressly and emphatically made so, and thus throwing the burden upon the vendor, instead of the vendee, where it belongs. This view leads off into wrong reasoning, and to wrong conclusions. I desire to hold myself free on this subject, in any future cause in which it may properly arise, and not to be precluded by cases in which it may be touched *arguendo* only, but which do not turn upon it.

The subject is somewhat touched upon in *Usher* v. *Livermore*, 2 Iowa, 118, but it was not directly called for, and it would have been forced, to enter upon it at length in that case. In *Gillis* v. *Matthews*, 1 Iowa, 242, I appended a brief note on this point. In *Young* v. *Daniels*, 2 Iowa, 127, nothing is said. To my view, these cases stood fairly upon other grounds. In *Brink* v. *Morton*, I had been of counsel, and took no part. A note to this effect, was omitted through mistake. In *Frank* v. *Purrington, post*, also I was of counsel, and have not read the opinion, and consequently make no comment. It would be interesting to pursue this subject into the examination of cases, but the duties of the court are too pressing to allow the indulgence.