# IN THE COURT OF APPEALS OF IOWA

No. 19-0126
Filed August 19, 2020

**SIBLEY STATE BANK,**
Plaintiff-Appellee/Cross-Appellant,

**vs.**

**ROBERT ZYLSTRA, Assignee of DALE W. BRAAKSMA, DANNA S. BRAAKSMA and JESSE DALE BRAAKSMA,**
Defendant-Appellant/Cross-Appellee.

_____

Appeal from the Iowa District Court for Osceola County, David A. Lester, Judge.

Assignee of redemption rights on two foreclosed farms appeals a ruling finding the amount he tendered was insufficient to redeem the properties. **AFFIRMED.**

Jeff W. Wright and Joel D. Vos of Heidman Law Firm, P.L.L.C., Sioux City, for appellant.

Brandon J. Krikke and Nathan J. Rockman of Dekoter, Thole, Dawson & Rockman, P.L.C., Sibley, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

After Sibley State Bank's foreclosure action, the district court directed the Osceola County Sheriff to sell two farm parcels mortgaged by the Braaksma family.[1] The winning bids at the October 3, 2017 sheriff's sales were $974,284 by the bank for a larger tract and $410,000 by Jo's Family Farms, LLC for a smaller parcel. After the sale of the real estate, the Braaksmas had one year to redeem their properties.[2]

Three-hundred and sixty-four days later, the Braaksmas assigned their redemption rights to Robert Zylstra. That same day, he tendered a check for $1,384,284 to the clerk of court, intending to redeem both parcels. Because Zylstra included no interest or other costs in the payoff amount, the bank argued the redemption failed. The district court agreed, holding Zylstra lost his assigned rights when he did not pay the full redemption amount for the properties within the one-year statutory period. Zylstra challenges that holding on appeal.

---

[1] "For more than a decade, Sibley State Bank loaned money to Dale and Danna Braaksma, their son Jesse, and Braaksma Grain Farms, Inc. (collectively the Braaksmas) and secured mortgages on their farmland as collateral." *Sibley State Bank v. Braaksma*, No.17-1021, 2018 WL 3471850, at *1 (Iowa Ct. App. July 18, 2018).

[2] The district court held that the one-year redemption period expired at midnight on October 4, 2018. We disagree. Redemption may occur within one year of the day of the sale. Iowa Code § 628.3 (2017). When computing time, we exclude the first day and include the last day. *See* Iowa Code § 4.1(34); *see also* Iowa R. Elec. P. 16.309(1)(c) ("A document is timely filed if it is filed before midnight on the date the filing is due."). So excluding October 3, 2017, and including October 3, 2018, the one-year redemption period expired at midnight on October 3, 2018. *See Lane v. Spencer Mun. Hosp.*, 836 N.W.2d 666, 667 (Iowa Ct. App. 2013) (adopting anniversary-date rule, in other words, deeming statutory period to commence the day after the act and end at the close of the anniversary of the day the act occurred).

After an independent review of the record, we reach the same result as the district court. Zylstra could not redeem the property when he tendered only the principal amount of the sheriff's sale bids. His belated attempt at partial redemption also fails. Because Zylstra was unsuccessful in redeeming the properties, we need not decide the correct interest rate or whether the court should have included attorney fees in the redemption amount.

## I. Facts and Prior Proceedings

To set the stage, we open with the bank's foreclosure in June 2017.[3] One month later, the bank filed praecipes with the Osceola County Clerk of Court directing the clerk to issue special executions to the county sheriff.[4] In turn, the clerk issued special executions with information from the foreclosure decree.

Based on these filings, Deputy Kevin Wollmuth conducted a pair of sheriff's sales at the Osceola County courthouse on October 3, 2017. He identified the two properties as Docket Nos. 17-0715(1) and 17-0715(2). The bank had the winning bid of $974,284.02 on Docket No. 17-0715(2), a tract of about 238 acres that had been farmed by Dale and Danna Braaksma. Jo's Family Farms had the winning bid of $410,000.00 on Docket No. 17-0715(1), which included about 79 acres that had been farmed by Jesse Braaksma. The winning bidders took the property subject to the Braaksmas' one-year right of redemption. *See* Iowa Code §§ 626.95, 628.3.

---

[3] Our court upheld the grant of the bank's motion for summary judgment in the mortgage foreclosure proceedings. *Braaksma*, 2018 WL 3471850, at *5.

[4] Praecipe is the Latin word for "command." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 694 (3d ed. 2011). The somewhat archaic term survives at Iowa Code section 602.8105(2) (2017) as a means for the clerk to execute on a judgment.

Fast forward almost one year. In late September 2018, Jesse Braaksma reached out to both Osceola Clerk of Court Stephanie Wollmuth and Deputy Wollmuth to determine the amount needed to redeem the properties.[5] Both the clerk and the deputy informed Braaksma they could only provide the bid amounts for the sheriff's sales, not the full amount necessary to redeem the properties. Deputy Wollmuth suggested contacting the bank's attorney, Nathan Rockman, "to get the exact amounts." Braaskma responded that he would "find out from the bank's attorneys."

Then, on the morning of October 2, 2018, the Braaksmas assigned their redemption rights to Zylstra. Less than an hour later, Jesse Braaksma emailed Deputy Wollmuth again asking for information about the redemption amount. Anticipating Deputy Wollmuth's previous suggestion to ask attorney Rockman, Braaksma justified avoiding that avenue by saying, "I cannot approach the bank's attorneys due to our opposing positions in the case." A couple of hours later, Deputy Wollmuth responded that he did not know the costs of redemption and "the exact amounts will have to come from the Clerk or the Attorney."

At the end of this busy day, Jesse and his father, Dale Braaksma, as well as Robert Zylstra and his son Tommy, all traveled to the clerk of court's office. Tommy had called ahead to see how late the office was open. The evidence conflicts on what happened when the quartet reached the clerk's office. For sure, Robert Zylstra wrote a check to the clerk of court for the combined amount of the

---

[5] The Wollmuths are husband and wife.

winning bids—$1,384,284. Zylstra noted the check was for "2 sheriffs deeds for 2 farms 320 acres." Zylstra testified that he asked clerk Wollmuth repeatedly if that amount would be "payment in full" and she said, "yes, as far as she knew it would be." She then printed out a receipt showing a balance due of "zero dollars."

In defending her actions, clerk Wollmuth debunked Zylstra's recollection. She acknowledged calling the bank's attorney Rockman after receiving Tommy Zylstra's call that they were on the way to redeem the properties. But she testified Rockman did not inform her of the payoff amounts in that call. She testified that she told Zylstra she had "no idea what amount" was needed to redeem the properties—"I just told him I would accept what he gave me." Wollmuth added that it was the clerk's policy not to determine redemption amounts.[6] After Zylstra left, Wollmuth again contacted Rockman to inform him that she received a redemption payment.

On October 5, the bank applied for a hearing on the redemption issue.[7] The application asked the district court to "enter an order that Zylstra's funds, held by the Clerk, be returned to him, and further, order that no redemption has occurred." The bank also filed an affidavit on redemption, asserting that when interest, taxes,

---

[6] Attorney Rockman sent an email at 3:19 p.m. on October 2 that included the bank's estimate of the payoff amount for the parcel purchased by Jo's Family Farms. Clerk Wollmuth acknowledged reading that email before Zylstra arrived at 4:15 p.m. But she did not relay that information to Zylstra. Rockman sent an email at 4:39 p.m. with the payoff amount for the bank's parcel. The clerk did not see that email until the next morning.

[7] In its motion, the bank listed payoff amounts (including principal, interest, and costs) for both properties for October 2, 3, and 4, 2018.

insurance, and legal costs were included, the total amount to redeem both properties was $1,648,747.[8]

Zylstra testified he did not learn about the additional redemption amounts until October 5. Four days later, Zylstra returned to the clerk's office and tendered a second check. This time for $267,876—the difference between the bid amounts and the additional costs and interest the bank alleged to be due on October 5, plus an estimated per diem amount of interest through October 9, 2018.

The district court held a hearing on the redemption issue in November and issued its ruling in December 2018.[9] In its ruling, the court determined the "requisite redemption sum" for both properties was $1,634,873.58.[10] The district

---

[8] The affidavit asserted these redemption amounts:
> (1) Sheriff sale bought by Sibley Bank Payoff: $1,164,744.81 ($974,284.02 principal and $175,851.58 in interest and $14,609.21 in costs). (Costs = Real Taxes: $4996.00; Legal: $8635.34; Insurance: $977.87).
> (2) Sheriff sale bought by Jo's Family Farm LLC Payoff: $484,002.19 ($410,000.00 principal and $74,002.19 in interest).

[9] Zylstra argued the district court should find his attempt to redeem both parcels was effective for four reasons: (1) as assignee he paid the amount required by the clerk of court, (2) no interest was required to redeem because no rate was noted on the certificates of sale; (3) if payment was insufficient, the deficiency was caused by a good faith error; and (4) if payment of interest was required for effective redemption, the court should apply the regular contract rate and not the default interest rate.

[10] The district court included this table in its decision:
> **Certificate #1**
> Certificate #1 Bid Amount 974,284.02
> Certificate #1 Costs to Redeem (Sheriff's Costs) 601.03
> Subtotal Certificate #1 974,885.05
> Certificate #1 Interest at 18% by Decree (363 Days) 176,831.82
> Certificate #1 Requisite Redemption Sum 1,151,716.87
> **Certificate #2**
> Certificate #2 Bid Amount 410,000.00
> Certificate #2 Costs to Redeem (Sheriff's Costs) 601.03
> Subtotal Certificate #2 410,601.03
> Certificate #2 Interest at 18% by Decree (363 Days) 74,415.00

court excluded attorney fees and interest that accrued before the sheriff's sale from its calculation for redemption by a third party. Because Zylstra tendered insufficient payment for both properties within the one-year redemption period, the court held his attempt to redeem the properties was ineffective.

In reaching its holding, the court found Zylstra made a mistake of law in calculating the required redemption amount. But his mistake of law was not grounds for equitable relief. Plus, the district court found no duty on the part of the sheriff or the clerk of court to notify Zylstra of the payoff amounts. The court noted that if Zylstra had questions about the requisite redemption amount he should have taken advantage of the "safe harbor" provision at Iowa Code section 628.21.[11] Finally, the court rejected Zylstra's belated attempt at partial redemption under section 628.23, surmising that statute "seems to require that Zylstra, at the very least, state which parcel he wanted to redeem, rather than be given the opportunity to choose post-ruling."

---

> Certificate #2 Requisite Redemption Sum 485,016.03

By our calculation, the requisite redemption sum for certificates #1 and #2 is $1,636,732.90 and not the sum reached by the district court. But the discrepancy is not critical to our decision.

[11] That provision states:

> In case any question arises as to the right to redeem, or the amount of any lien, the person claiming such right may deposit the necessary amount therefor with the clerk, accompanied with the affidavit above required, and also stating therein the nature of such question or objection, which question or objection shall be submitted to the court as soon as practicable thereafter, upon such notice as it shall prescribe of the time and place of the hearing of the controversy, at which time and place the matter shall be tried upon such evidence and in such manner as may be prescribed, and the proper order made and entered of record in the cause in which execution issued, and the money so paid in shall be held by the clerk subject to the order made.

Iowa Code § 628.21 (2018).

Zylstra appealed in January 2019. The bank cross-appealed from the district court's refusal to include attorney fees when calculating the payoff amount. The supreme court transferred the case to the court of appeals.

While the appeal was pending, the bank applied for fees and costs associated with legal services in the district court. Flagging entries in attorney Rockman's billing statements, Zylstra moved for a limited remand to conduct additional discovery. Zylstra anticipated the evidence would show the bank's attorney and clerk Wollmuth "were working in concert to withhold information" from him for the bank's benefit. The motion asserted: "The evidence discovered since the district court ruled and this appeal was filed raises serious questions regarding fraud, mistake, or other circumstances." Our court granted a limited remand.

In the intervening months, the parties wrangled over the scope of the remand and the proper methods of discovery. In a June 2020 filing in the district court, Zylstra dropped his allegation of fraud against the clerk of court. He noted he "was initially concerned that a fraudulent conspiracy to prevent proper redemption was afoot based upon the Rockman billing statement." But according to Zylstra, "Further development of the evidence makes clear . . . that a mistake in communication occurred during the critical days near the expiration of the redemption period."

After hearing oral arguments, the district court issued its order ending the limited remand on June 25, 2020. The court admitted additional evidence into the record but declined to modify its original ruling.[12]

---

[12] Based on the newly discovered evidence, Zylstra requested the district court either extend the redemption deadline from October 4 to October 9, 2018, or

The court acknowledged "a series of mistakes in judgment and unusual circumstances occurred during the time period immediately preceding the October 4, 2018, redemption date." The court blamed clerk Wollmuth for

> improperly involv[ing] herself and her office staff in these proceedings by contacting Attorney Rockman concerning the inquiry she received from Zylstra's son, Tommy, earlier in the day on October 2, 2018, which led her to conclude they were coming in to her office to redeem the two certificates at issue in this case.

The court continued, "While Wollmuth correctly did not ask Rockman at that time for payoff amounts necessary to redeem the two certificates (nor did Rockman volunteer those amounts), she, nonetheless, then mistakenly called Attorney Rockman to report the amount that Zylstra had paid." Despite an appearance of impropriety, the court found "Wollmuth acted in accordance with the directive set forth in the Manual for Clerks of Court, which provides that clerks do not have a duty to determine redemption amounts." As its bottom line, the district court found any mistakes by the clerk did not cause Zylstra's failure to tender the proper redemption amounts.

The district court also held the bank's attorneys owed no duty to advise Zylstra or to contact him with the redemption amounts. Where should Zylstra have turned? The district court explained:

> [A] basic tenet underlying any transaction where one party is purchasing real property belonging to another is that the purchaser obtains the purchase price from one of two sources; the owners of the property who, in this case, are the Bank and Jo's, or from the agent handling the sale, which in this case are Attorneys Rockman and [Dan] DeKoter.

---

conclude that he properly redeemed because the clerk of court knew the correct payoff amount but did not share that information with him.

Because Zylstra did not contact those sources, the court decided he was not entitled to equitable relief.

In a July 14, 2020 order, our court lifted the stay on submission of the appeal and agreed to consider the additional evidence admitted by the district court during the limited remand but denied Zylstra's request for additional briefing.

## II.      Scope and Standards of Review

We review de novo all issues related to redemption in an equity action. *Fed. Land Bank of Omaha v. Heeren*, 398 N.W.2d 839, 841 (Iowa 1987). But to the extent this case turns on statutory interpretation, we review for errors at law. *See Estate of Cox by Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 302 (Iowa 2017).

## III.     Analysis

Zylstra advances two arguments. First, he contests the district court's holding that he did not effectively redeem both farms. Second, as an alternative argument, he contends he paid a sufficient amount to redeem at least one of the farms. We will address each claim in turn.

### A.      Full Redemption

"The right to redeem is purely statutory." *First Nat'l Bank of Glidden v. Matt Bauer Farms Corp.*, 408 N.W.2d 51, 53 (Iowa 1987) (citing Iowa Code section 628.3 (1985)). The right runs for one year from the date of the sheriff's sales. *Id.* The winning bidders, here the bank and Jo's Family Farms, received sheriff's certificates. *See* Iowa Code § 626.95. During the one-year redemption period, the debtors (or their assignee) could have redeemed the property by paying the sale price plus the remaining amount of the certificate holder's lien, including costs and interest. *See* Iowa Code § 628.13. The failure to redeem within one year entitles

the bank and Jo's Family Farm, as the certificate holders, to sheriff's deeds to the property.  *See* Iowa Code § 626.98.

In this appeal, Zylstra concentrates on the district court's application of the 18% default interest rate in determining the redemption amount.  He contends the proper interest rate was a "blended" contract rate of 5.0894%.  Using that rate, he submits the redemption amount would have been $1,454,735.77 rather than the $1,636,732.90 figure calculated by the district court.[13]  But, as the bank points out, Zylstra paid neither of those amounts during the one-year redemption period.  By the deadline of October 3, 2018, Zylstra tendered only the combined sale price of $1,384,284, without any interest at all.  After Zylstra failed to pay the total redemption amount in time, the certificate holders were entitled to receive the sheriff's deeds.  Zylstra's attempt to rectify the payment deficiency by handing the clerk a second check on October 9 fell outside of the one-year redemption period.

Not until his reply brief does Zylstra tackle the deadline question.  There he argues, "[T]his Court should use its equitable power to allow for a short extension of the one-year timeframe and credit Zylstra for the additional $267,876.28 he tendered on October 9, 2018."  Like the district court, we are disinclined to move the goal posts as a matter of equity.  Our supreme court has been reluctant to extend this statutory deadline.  *See Heeren*, 398 N.W.2d at 844; *see also Nw. Mut.*

---

[13] Zylstra ventured the novel argument on appeal that the district court should have allowed earlier receivership funds to be directed toward interest payments calculated at the rate of 5.0894%.  According to Zylstra, receivership funds in the amount of $79,434.82 coupled with the sheriff's sales amount Zylstra tendered to redeem the farms should have covered the full cost of redemption.  Sibley deflates this argument as one not raised before.  We agree.  Zylstra did not preserve this issue for appeal.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

*Life Ins. Co. v. Hansen*, 218 N.W. 502, 505 (Iowa 1928) (endorsing strict compliance with redemption statute). And Zylstra presents no sound reason for doing so here.

In his briefing to the district court during the limited remand, Zylstra focused on the sequence of communications involving clerk Wollmuth and attorney Rockman on October 2, 2018, and the days following. He asserted the record was "replete" with examples of the bank's lawyer providing payoff amounts to the clerk of court and sheriff, "but not Zylstra." He characterized his payment of the less-than-the-redemption amount as a mistake resulting from "miscommunication and misunderstanding" on the part of the clerk.[14] From that premise, Zylstra argued it was within the court's equitable powers "to permit redemption after expiration of the time fixed by the statute in cases of fraud, mistake, or other circumstances." *See Olson v. Sievert*, 30 N.W.2d 157, 158 (Iowa 1947); *Wakefield v. Rotherham,* 25 N.W. 697, 699 (Iowa 1885). Zylstra contends he attempted in good faith to redeem the properties by paying the amount of the winning bids.

The bank countered, in its briefing during the limited remand, that Zylstra's payment of only the principal amount—on October 2, 2018—without interest was "neither reasonable nor in good faith." The bank argued,

> The Zylstras had the benefit of counsel who they employed for this particular transaction, and who had spent 8.3 hours of time on the redemption issue before Zylstra made his payment. Any competent Iowa attorney spending this much time on this seven-figure transaction would have concluded and advised the client that there was interest to be paid in addition to principal. The fact that Zylstra blames everyone else, but refuses to disclose his knowledge is

---

[14] Zylstra admits he could have sought the payoff amount from the bank or attorney Rockman's office himself but then asserts, "Braaksma did not believe the bank would give an accurate number, so he did not call them."

telling. Furthermore, had Zylstra been acting in good faith, he would have directed his attorneys to contact the Bank's attorneys to obtain the correct redemption figures.

The bank emphasized, "The additional evidence obtained during the remand only substantiates and confirms that the clerk never provided any information to Zylstra about the payoff amount, nor did she opine about the sufficiency of any amounts paid by Zylstra."

After considering the new evidence on limited remand, the district court was rightly critical of the appearance of impropriety created by the back-channel communications between the clerk and attorney Rockman. On the other hand, the court discounted the effect of those communications on Zylstra's failure to tender the proper amount to redeem the properties within one year of the sheriff's sales. Echoing its original ruling, the court found the record was "still devoid of any evidence explaining why Zylstra failed to take advantage of the safe harbor provided by Iowa Code section 628.21 by filing the affidavit authorized by that section."[15]

After our independent review of the record, we reach the same decision as the district court. The clerk of court had no duty to inform Zylstra of the redemption amount. *See generally Armstrong v. Pierson*, 5 Iowa 317, 319 (1857) ("In receiving the money, the clerk is only the agent of the party entitled thereto."). Instead, the responsibility to seek the correct payoff amount from the bank or its attorney rested

---

[15] In its original ruling, the district court cited *Kendig v. McCall*, 110 N.W. 458 (Iowa 1907), and *Eliason v. Stephens*, 246 N.W. 771 (Iowa 1933), for the proposition that an earlier version of this statute enabled the person desiring to redeem to test that right. Even if Zylstra had filed an affidavit under section 628.21, he could not have maintained a proceeding under that provision if the amount deposited with the clerk was insufficient to make redemption. *See Hansen*, 218 N.W. at 505.

with Zylstra as the assignee of the debtors. He shirked that responsibility. Unlike the situations in *Wakefield* and *Olson*, where clerks misstated the amounts required to redeem, the mistake in calculating the payoff amount here was Zylstra's fault alone. *See Olson*, 30 N.W. at 158; *Wakefield*, 25 N.W. at 698. Even considering the additional record created in the limited remand, we find no equitable basis to grant Zylstra relief. *See Tharp v. Kerr*, 119 N.W. 267, 269 (Iowa 1909) ("Although equity will always seek to relieve against the consequences of accident or mistake, it must guard itself that it offer no premium to neglect or default. Nor can it make too light of the statutory rights of the adverse party.").

### B. Partial Redemption

Next, we address Zylstra's claim that the court should have allowed him to redeem at least one of the two properties because the amount he tendered to the clerk on October 2, 2018, exceeded the redemption amount for either of the two properties considered separately.[16] In his appellant's brief, Zylstra asks us to determine that "he effectively redeemed the Dale and Danna Braaksma farm." (That parcel was purchased by the bank for $974,284.) But Zylstra took a different position in his district court brief on remand, claiming he "properly redeemed Jo's property because the clerk had the payoff amount in hand when redemption was attempted." (That parcel, farmed by Jesse Braaksma, was purchased by Jo's Family Farms for $410,000).

---

[16] The bank claims Zylstra did not preserve error on the partial redemption issue. It notes that in the district court, Zylstra "neither briefed nor mentioned" Iowa Code section 628.23 (allowing redemption for "any distinction portion" of property sold in parcels). Despite that omission, the district court addressed partial redemption in its original ruling. We thus find Zylstra preserved error on this issue.

"[W]hen a parcel of land is sold en masse, it must be redeemed as a whole; but . . . when the property has been sold in parcels, any distinct portion may be redeemed by itself." *Council Bluffs Inv. Co. v. Kay*, 255 N.W. 721, 723 (1934); *see* Iowa Code § 628.23. So how does this rule apply to Zylstra's situation? Weighing in Zylstra's favor, the sheriff sold the property at issue in two parcels. Tipping against his position, Zylstra failed to express any intent on October 2, 2018, that he intended to redeem a "distinct portion" of the property.

The district court denied Zylstra's request to redeem just one of the sheriff's certificates. In doing so, the court first noted the lack of precedent on the question:

> The court has not found nor does Zylstra cite any authority that answers the question presented here, which is: If an assignee intended to redeem both of two parcels that were sold separately at a sheriff's sale but due to their own mistake only tenders enough within the redemption period to redeem one of those parcels, is that party then entitled to select which parcel he wants to redeem after the redemption period expires?

Like the district court, we unearthed no authority to address this question. So the best we can do is look to the language of section 628.23. We learn a statute's meaning from the "words chosen by the legislature." *See Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019) (quoting *State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017)). As the district court reasoned, the clause in section 628.23 allowing "any distinct portion [to be] redeemed by itself" would "require that Zylstra, at the very least, state which parcel he wanted to redeem, rather than be given the opportunity to choose post-ruling." Zylstra's check noted his intent to redeem "2 sheriffs deeds for 2 farms." His insufficient payment for the redemption of two properties together cannot translate into an after-the-fact

redemption of one property without direction to the clerk of court that he intended to so.

Even now, it is not clear which of the two properties Zylstra intends to redeem. The statutory process of redemption cannot be a guessing game for the certificate holders. Zylstra failed to pay an amount sufficient to redeem the two properties he sought. He did not allocate any funds toward the costs or interest on the two properties. Then he unsuccessfully tried to rectify that failure by tendering another check for the unpaid portion after the expiration of the one-year redemption period. He never asked the clerk to allocate any portion of the funds he tendered to redeem just one of the properties. No case law or statutes support Zylstra's belated request to redeem one of the two parcels. We thus affirm the district court's ruling that Zylstra may not redeem one certificate.

Having found Zylstra is not entitled to redeem either or both of the parcels, we need not address the bank's cross appeal from the exclusion of attorney fees from the redemption amounts.

**AFFIRMED.**